## JOHN A. WRIGHT v. WILLIAM F. DICKINSON AND CHASE H. DICKINSON.

[See 56 Mich. 42; 67 Id. 580].

*Void contracts—Ratification—Joint liability—Admission of counsel—Evidence.*

1. The holding on the former hearing of this case, that the plaintiff could maintain his suit, and recover back his money paid upon the void contracts, less all the benefits he had received from the lands while they were in his possession under such contracts, is approved of as the most equitable way of disposing of the contention between the parties.

2. Where a son executed a land contract in his name and that of his father, they being *joint* owners of the land, and payments were received by the son upon their joint account, and the father afterwards undertook to ratify the agency of the son, which action was insufficient to validate the contract, but was sufficient to ratify the agency of the son so far as the receipt of the money was concerned.

*Held*, that an action will lie in favor of the vendee against the vendors *jointly* to recover the money so paid.

3. In *such* a case the jury, in determining the question of such *joint* liability, have the right to take into consideration the facts of the approval of the contracts by the father in writing upon the duplicates in his son's possession, after the making of such payments, and his joining with the son in a suit to recover the purchase money, which joinder may be shown by the pleadings, as tending to prove a ratification or adoption of such payments, which they may find from such acts.

4. If an admission made by counsel on the trial of a case is so ambiguous that the court is unable to determine its meaning the counsel is entitled to the benefit of the doubt, and has a right to put his own construction upon the language used, and it is error to submit the question to the jury.

5. In a suit where plaintiff claimed to have quit lumbering on certain lands sold him by the defendants by reason of the service on him of an injunction restraining such work, which claim was denied by defendants, as also the *fact* of such service, the testimony of witnesses as to hearing of such service, offered for the alleged purpose of fixing the *date* when such lumbering operations were suspended, but which was unnecessary for *that* purpose, is inadmissible.

6. After a witness has testified to pointing out to another witness certain lands, the government descriptions of which he is unable to give, it is competent for such second witness, after testifying that the lands were so pointed out to him, and that he knows such descriptions, to give the same.

Error to Allegan. (Arnold, J.)    Argued April 17, 1889. Decided June 21, 1889.

Assumpsit to recover money paid on land contracts. Defendants bring error.    Reversed.    The facts are stated in the opinion.

*Howard & Roos* and *Osborne & Mills*, for appellants.

*Padgham & Padgham* (*Dallas Boudeman* and *Hampden Kelsey*, of counsel), for plaintiff.

MORSE, J.    May 13, 1872, the defendants, Chase H. and William F. Dickinson, were the owners of certain lands in

the township of Columbia, Van Buren county, Michigan. Chase H. owned one-fourth and William F., his father, three-fourth of these lands. On that day Chase H. sold to the plaintiff 40 acres of the land for $500, and executed a land contract for the same in the name of his father and himself; he signing his own name and his father's thereto. Wright paid $100 down on this contract.

July 20 of the same year, plaintiff purchased 200 acres more of said Chase H. Dickinson, the price to be paid being $2,500. A contract was executed in the same way as the first, and Wright also paid $100 down on the same. Both these contracts were executed in duplicate, Wright taking one copy, and Chase H. Dickinson retaining the other. William F. Dickinson was not present at the making of these contracts, and plaintiff had no talk or agreement with him of any kind in relation to said lands, supposing that Chase H. had full authority to act for his father.

The value of these lands was principally in their timber, and plaintiff, who owned a saw-mill, bought them for the express purpose of lumbering upon them.

Soon after his purchase he commenced cutting off the timber, principally pine and hemlock, and manufacturing the same into lumber.

It is admitted that he paid Chase H. Dickinson $1,600 upon the two contracts, and that he paid no money to William F.

Some time after the contracts were made, William F. indorsed the duplicates of the contracts in his son's possession as follows:

"This contract approved.          William F. Dickinson."

He did not indorse either of the duplicates in the possession of plaintiff, and Wright did not know that he had indorsed those in the hands of Chase H. until after the commencement of this suit.

Plaintiff claims that he paid $200 to Chase H. Dickinson

on the first contract some time in the fall of 1872, while said Chase H. was about taking a train at Grand Junction. This payment the defendant Chase H. denies.

While plaintiff was lumbering on these and other lands, and in March, 1873, a suit was commenced in the United States court at Grand Rapids by the creditors of one Timothy Morse against the Dickinsons and one George L. Seaver, involving the title to the lands contracted to plaintiff, and an injunction was issued, and personally served on the Dickinsons March 10, 1873, restraining them "from incumbering, or in any manner disposing of, or intermeddling" with, any of the lands. Whether or not Wright was served with a copy of this injunction was a disputed question on the trial of this case.

The proceedings in the suit at Grand Rapids prevented the payment of any more money on these contracts, and, as the plaintiff claims, stopped the lumbering on the lands. It is also claimed by plaintiff that, during the time such suit was pending at Grand Rapids, forest fires ran through and destroyed much of the timber upon these lands.

In 1878 the plaintiff brought this action in assumpsit for money had and received against the defendants, and seeks thereby to recover back the $1,800 which he claims to have paid upon the two contracts.

Soon after this suit was commenced, the Dickinsons brought suit against this plaintiff to recover the balance of the purchase money claimed by them to be due and unpaid upon the two contracts. This last suit was tried first. The Dickinsons had judgment in the circuit, but in this Court the judgment was reversed and no new trial granted; the Court, by COOLEY, C. J., holding that the contracts were void because Chase H. had no written authority from his father to sign his name to the contracts, and that the indorsement of approval by William F. upon the duplicates in the hands of Chase H. was

not sufficient to ratify them. See *Dickinson v. Wright*, 56
Mich. 42.

The present case has once been in this Court. The defend-
ants obtained a judgment in the court below on the ruling of
the circuit judge that Wright could not maintain his suit
because he had lumbered at least a portion of the lands, and
was in no position to rescind his contracts, as he could not
place the defendants *in statu quo*. We held, upon a review
of the case in this Court, that the action could be maintained
as laid, and that the equities in the case could be adjusted
without the interposition of equity; that all the benefits the
plaintiff had received, the value of the timber cut and removed
by him from the lands, and all other benefits derived there-
from, could be ascertained and allowed for in a common-law
proceeding and in this suit; that such benefits could and
must be deducted from the plaintiff's claim for moneys had
and received from him by the defendants. *Wright v. Dickin-
son, ante* 580.

On the second trial, which is brought here for review, the
plaintiff recovered a judgment for the sum of $1,833.12½.

The first allegation of error argued is that the court below
erred in ruling that the land contracts were void. It is
insisted by the counsel for the defendants that, in view of
the equitable action for money had and received resorted
to by the plaintiff, the contracts should be treated as they
would be in equity; and that, if it be granted that they were
void, and not enforcible at law, there has been yet such a part
performance in the taking of possession of the lands by Wright
and lumbering upon them, and in the partial payments, as
would render the contracts enforcible in equity upon his
motion against the defendants; and as the only claim the
plaintiff made in his bill of particulars was that the defend-
ants were not in a situation to give him a title, and the evi-
dence showed on the trial that defendants were the owners of

the lands, and could give a good title, he cannot recover back the money paid by him upon the contracts.

We suppose from the argument that the contention is that he must, under these circumstances, pay the balance of the purchase money, and accept a deed of the lands from the defendants if they are willing to convey, as it is averred they are.

We think this controversy, in the light of the present record, and the former decisions of this Court in *Dickinson v. Wright*, 56 Mich. 42, and *Wright v. Dickinson, ante,* 580, was placed, as far as this question is concerned, in the right situation by this Court.

It is evident that there were several years, while these lands were in litigation in the United States court, in which the Dickinsons could not convey these lands to plaintiff, or even accept any payments on the contracts. There was also evidence tending to show, and sufficient to go to the jury, that Wright stopped lumbering on these lands because of the injunction against the Dickinsons, and he claims that he was served with a copy of the same; and during these years fires ran through the timber, destroying more or less of it. The defendants saw fit to go into a court of law to recover from Wright the balance of the purchase money upon the contracts, and we held that the contracts were void at law. It is unnecessary to discuss the wisdom of this decision, as it must now stand as the law of this case. Acting upon the same idea as the defendants, the plaintiff brought this suit at law, and, following said decision, we held in the present case, when it was here before, that the plaintiff could maintain his suit, and recover back his money paid upon the void contracts, less all the benefits he had received from the lands while they were in his possession under such contracts.

This now seems the most equitable way of disposing of this contention between the parties. The plaintiff certainly was

not in fault in regard to the suit in the United States court
against the Dickinsons, or responsible in any way for the
injunction that led to all the trouble and controversy between
him and them. The defendants ought not to complain if
they receive the full value of the timber taken off from, and
other damage done to, their lands, and the plaintiff ought
certainly to have back the money he paid towards the lands,
less the benefit he received from his possession and use of
them.

This is now the easiest and the best way out of this difficulty,
and by it no wrong ought to be done to either party, and can-
not be, except in the chances that all litigants must take in
submitting disputed questions of fact to a court or jury.

The second claim of error in the proceedings is the refusal of
the court to instruct the jury that there could be no recovery
against the defendants in a joint action, and exception is also
taken to the instructions of the circuit judge in relation to
the evidence required, or that might be used by the jury, in
determining whether or not William F. Dickinson was liable
in this suit.

The first contention under this head is that, if the con-
tracts were void because Chase H. Dickinson had no written
authority from his father to execute them, and the subse-
quent written approval upon the duplicates in the hands of
Chase H. by the father was not sufficient to take the same
out of the statute and ratify them, no suit can be maintained
on a joint contract, because none ever existed. It is argued
that, if these contracts were not binding upon the plaintiff,
they were not binding on the defendants, and this case must
stand upon the basis of a verbal agreement made with Chase
H. Dickinson alone, at least so far as the rights of William
F. Dickinson are concerned. This contention, if correct,
would end this case, and, in a suit against Chase H. Dickin-
son alone, the plaintiff would recover the whole of the money

paid, as Chase H. could not set off against plaintiff the value of the timber taken which belonged jointly to Chase H. and William F. Dickinson.

We see no difficulty in regard to this part of the case. The payments, it is true, were all made to Chase H. Dickinson, and Wright had nothing to do in any way with William F.; but there was evidence tending to show that these payments were received by Chase H. Dickinson upon the joint account of his father and himself, and it was so understood by all the parties. Chase H. acted as the agent of his father, and his father undertook to ratify such agency. The ratification, as made, was not sufficient under our statutes to make the contracts for the purchase of the real estate good in law, but it was sufficient in law to ratify the agency as far as the receipt of the money was concerned. It is claimed that the counsel for defendants at first so understood it. When the question came up in the first part of the trial as to the payments made upon the contracts, Mr. Howard, one of such counsel, said:

"There is no question but that you paid us on the contract $1,500, and on the other one $100. The only dispute about the payments is the $200 on the contract for the forty acres."

*Mr. Boudeman.* "You admit $1,600 and we claim $1,800; is that the idea?"

*Mr. Howard.* "That is it, exactly."

It was afterwards claimed on the trial below, and also in this Court, that this admission was only intended to apply to the payments to Chase H., and not meant as an admission of payments to both defendants on joint account.

The court instructed the jury that it was for them to determine what this concession of counsel was, as they heard it, and that, if they found that the counsel conceded that these payments were made jointly to defendants, or to Chase H. on their joint account, it would obviate the necessity of further proof upon that subject.

" If the concession was that the $1,600 was paid to the defendants upon the contracts, this would obviate the necessity of proof that it was paid them jointly. If the concession was that it was only paid to Chase H. Dickinson upon the contracts, this, of itself, would not establish a payment to them jointly, or a joint liability."

The court erred in submitting this matter to the jury. If the admission was so ambiguous that the court could not determine what was meant by it, and found it necessary to submit its meaning to the jury, the counsel for the defendants should have been allowed the benefit of the doubt, and been permitted to put his own construction upon his own language. No one could know better than he what he meant, and, unless the language of itself was conclusive, the jury had no business with it as an admission different from that claimed by its author.

We think, however, that the court properly charged the jury that, in determining whether or not there was a joint liability in the case, they had the right to take into consideration the fact that William F. Dickinson approved the contracts in writing after payments had been made, and also that he joined Chase H. in a suit to recover the balance of the purchase money upon the contracts from plaintiff, as facts tending to prove a ratification or adoption of the payments so made, and that they were at liberty to find such ratification from such acts.

All the facts and circumstances of the conduct of the Dickinsons in relation to these contracts, and the payments made and received thereon, were legitimate as bearing upon the disputed issue whether the payments made to Chase H. were received by him on the joint account of his father and himself, and whether his father ratified such receipt.

The charge of the court in this respect was full and fair, and we can find no fault with it.

The court admitted in evidence the files of the United

States court in the injunction suit against Seaver and the Dickinsons. We can see no harm in the admission of these files. Certainly the issuing of the injunction and the service of it had some materiality upon the issue, and there was nothing in the balance of the files that could hurt the defendants; and in fact these files were a benefit to them in one respect, as they showed no injunction ever issued against or served upon Wright, while he testified that a copy directed to him was served upon him, and that such service was one of the reasons why he stopped lumbering at the date he claims he did.

We do not think it was proper to prove by witnesses, sworn on the part of the plaintiff, that they had heard of an injunction being served upon the plaintiff. It was offered and received for the purpose of fixing the time when plaintiff quit lumbering on the land. The objection of defendants' counsel, that it did not appear that it was necessary to identify the time in any such way, appears from the record to have been well taken. The question whether or not Wright was served with an injunction was disputed on the trial, and was made material because Wright claimed he quit cutting because of such service, while the defendants claimed that there was no reason why he should have quit lumbering, and that he did not do so until all the timber of value had been used up. This hearsay evidence was unnecessary for the purpose for which it was ostensibly offered and received; and, although its admission was guarded by the court, in the statement that it must not be used to prove that any injunction has been issued or served, we are not satisfied that it was not so used to the prejudice of the defendants.

The court also erred in excluding the proposed testimony of Benjamin Smith. John Morley, a witness for the defendants, worked for Wright in 1874 and 1875, and testified that in those years he lumbered for Wright on lands which Wright

stated to be the Dickinson lands. The witness knew the ground upon which he worked, but could not give the government subdivision of the lands. He testified that he went onto the ground where he worked, and pointed out to Benjamin Smith all the lands that he lumbered on.

Benjamin Smith was then offered as a witness, and testified that he was on the lands with John Morley, and that Morley pointed out to him where he cut for Wright. This was objected to, and the objection sustained by the court. Defendants' counsel then proposed to prove by Smith that he knew the legal subdivisions, and to have him give the descriptions. This was also rejected.

This evidence was competent and was material, as the plaintiff claimed that he quit lumbering on the Dickinson lands in 1873.

The letter of Chase H. Dickinson of date October 29, 1872, was properly admitted.[1]

We think so much of the pleadings in the case of *Dickinson v. Wright* as were necessary to show that William F. Dickinson joined with Chase H. to enforce payment of the balance claimed to be due on these contracts was admissible in evidence in this suit for the purpose of showing an act of ratification on the part of William F. of the doings of Chase H. under these contracts, and as tending to establish a joint liability. It will be remembered that *Dickinson v. Wright* was commenced after the suit at bar, and, if William F. Dickinson joined in that suit, it certainly had a tendency to show

---

[1] This letter is addressed to plaintiff, and reads as follows: "The draft which you gave me for $50 on L. D. Clarke has been returned not paid. My house in Chicago say they made every effort to collect it, and he promised from day to day, but they could get nothing. Please to send me the money or some paper which can be collected with as little delay as possible, for I am hard up. Also, I should like to receive a remittance, as you promised to make payment on *that lot on the base line*, which we bargained for last time we met.
"Yours, etc.,
"C. H. DICKINSON."

that he treated the acts of Chase H. in making the contracts, and in receiving payments upon them, as the joint acts of himself and Chase H.

For the errors above noted the judgment of the court below must be reversed, and a new trial ordered, with costs of this Court to defendants.

The other Justices concurred.