OTTO R. NEWBERG, APPELLEE, V. CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY, APPELLEE: FIRST TRUST COMPANY OF LINCOLN, APPELLANT.

FILED JULY 11, 1930. No. 27238.

*Burkett, Wilson, Brown & Van Kirk,* for appellant.

*Jesse L. Root, Sanden, Anderson, Laughlin & Gradwohl* and *Maxwell V. Beghtol, contra.*

Heard before GOSS, C. J., ROSE, GOOD, EBERLY and DAY, JJ., and JAMES and WRIGHT, District Judges.

EBERLY, J.

This is an action in equity arising out of the following

transaction: At the time of his death, Dr. Bartlett L. Paine was the owner of lot 3, block 104, Lincoln, Nebraska. In his lifetime he granted the Chicago, Burlington & Quincy Railroad Company the right to extend a switch track, known as "Tyler Stub," over and across this lot. The railroad company thereupon constructed this extension and occupied a portion of this lot with their tracks. It appears that no public record was made of this transaction by Dr. Paine. When Dr. Paine died, he left a will, by the terms of which the defendant, the First Trust Company of Lincoln, was named as executor, authorized to sell all property of which the deceased died seised, and empowered and authorized as such executor to make all necessary deeds and conveyances transferring such property without license of any court. Mr. Newberg, the plaintiff, orally bargained for the purchase of this lot with this executor, and pursuant to the bargain an executor's deed was executed and delivered to the grantee. That the grantee accepted this conveyance relying upon the representations of the executor cannot be gainsaid. The following is, in substance, a resume of practically undisputed testimony on this subject: Mr. Newberg testified with reference to the negotiations for the purchase of the lot: "I asked Mr. Easterday (the authorized representative of the First Trust Company) what the size was of the lot, and he said it is 50 by 142. And I said, 'Are you sure?' And he said, 'Well, we will verify that by getting the abstract.' Mr. Easterday called in one of the assistants, or one of the stenographers, and she went to the files and brought out the abstract and we both examined the plat which was on the abstract. Mr. Easterday says: 'It is 50 by 142.' And I said, 'Mr. Easterday, if that is the case, we will buy the lot for $5,000.'" I took the lot in reliance "on his statement that the lot was clear, 50 by 142, and no buildings on it or tracks." Thereafter the sum of $5,000 was paid by Newberg to the executor in reliance on the oral representations thus made. The executor on its part executed and delivered to the purchaser a deed of conveyance of this lot bearing date 15th day of May, 1923, which was in July,

1923, delivered to and accepted by the plaintiff at the time the second and final payment was made. On April 28, 1927, it was first discovered by Newberg that a portion of the lot was occupied by the railroad tracks. Thereupon, after proper demand, this action was commenced in the district court for Lancaster county against the railroad company and "the First Trust Company of Lincoln, Nebraska, a corporation, and as executor of the estate of Bartlett L. Paine," in which plaintiff tendered a reconveyance of the property and asked for relief in equity; first, that the railroad company be required to remove the incumbrance, that is, the tracks; second, in the alternative, that, if the above relief be denied, the plaintiff be granted rescission, and the purchase price, together with taxes paid by plaintiff, refunded and returned; or, third, for the value of the property taken by the railroad tracks and damages sustained.

After trial the district court found as to the railroad company that its occupancy of a portion of the lot, initiated under the terms of Dr. Paine's letter, before the commencement of this case and before any claim was made upon said company, had developed into "an irrevocable license" to remain and the court thereupon dismissed the action against it. It may be said in passing that, in the present condition of the record, we are inclined to the view that this determination as to the railroad company's rights is not subject to serious challenge. But as between the plaintiff Newberg and the First Trust Company, as executor of the Paine estate, the trial court determined: "The deed to the property in question from Otto R. Newberg to the First Trust Company of Lincoln, Nebraska, as executor of the estate of Bartlett L. Paine, deceased, and now in the files of this court or in the hands of the clerk thereof, be turned over to the defendant the First Trust Company of Lincoln, Nebraska, as executor upon its demand for the same; that in case defendant the First Trust Company of Lincoln, Nebraska, executor, fails to take said deed and to pay to the clerk of this court for the said Otto R. Newberg the sum of $5,000 with interest

at the rate of 7 per cent. per annum from the 15th day of May, 1923, thereon, * .* * and the further sum of $429.46 with interest thereon at the rate of 7 per cent. per annum from this date within a period of twenty days from the entry of this decree, the said plaintiff shall have judgment against said First Trust Company of Lincoln, Nebraska, as executor of the estate of Bartlett L. Paine, deceased, for the sum of $1,500 with interest at the rate of 7 per cent. per annum from the said 15th day of May, 1923, together with execution for the satisfaction of the same," etc. From this determination the First Trust Company, as executor, has prosecuted an appeal.

It is the contention of the First Trust Company that the statute of limitations affords a complete defense to this action; that the executor was without authority to warrant the title, and any representations made at the time of the sale of the premises could in no manner bind the estate of Bartlett L. Paine; and that the plaintiff was entitled to neither rescission nor damages.

Taking up these questions in inverse order, it may be said the following facts seem, by fair implication at least, to be admitted by the parties. Lot 3 in suit, without the presence of the incumbrance constituted by the railroad tracks, and in the condition represented by the trust company, that is, being free of improvements or tracks, was fairly worth $5,000. Relying on the representations made by the executor as to the unincumbered character of the lot, Newberg purchased the same and paid $5,000 therefor, which representations of the trust company as to the condition of the lot were in fact untrue. The railroad tracks were at that time on a portion of this lot, and, due to the railroad company's rights in and possession of the premises, their occupancy had then ripened into "an irrevocable license" to remain. The presence of this incumbrance constituted an actual damage to the value of the lot in the sum of $1,500, or, in other words, the actual lot sold, because of the presence of the trackage upon it, was worth not more than $3,500. It would have been

worth $5,000 had the representations believed and relied upon been true.

If it be conceded that Dr. Paine's estate is not liable on the covenants of the deed, nor because of the representations of the executor, which plaintiff relied upon at the time of the purchase, it must be admitted that to the extent of $1,500 there has been a partial failure of consideration in the transaction here presented, and to this extent the Paine estate has been augmented as a result of what is claimed in its behalf, solely because of lack of *scienter*, amounts to no more than a mistake on the part of the executor.

This court was early committed to the doctrine: "Whether in an action for damages for false representations it is necessary either to aver or prove the *scienter*, the authorities do not agree. The better rule, and the one adopted by this court, is that the intent or good faith of the person making false statements is not in issue in such a case." *Johnson v. Gulick*, 46 Neb. 817. "A purchaser of real estate has a right to believe and rely upon representations made to him by his vendor as to the character, quality, and location of the property, when the facts concerning which the representations are made are unknown to the vendee." *Hoock v. Bowman*, 42 Neb. 80. See *Farley v. Weiss*, 76 Neb. 402. "Where one has made representations of fact shown to be false upon which the other party has relied to his damage, the intent or good faith of the party making the representations is immaterial in an action by the injured party to recoup his damages, or in an action by the former where the latter pleads the fraud of the plaintiff as a defense." *Bauer v. Taylor*, 4 Neb. (Unof.) 710. Indeed, the general rule appears to be: "False representations made by a vendor as to his title, though innocently made, upon which his vendee relies to his injury, may constitute such constructive fraud as will entitle the purchaser to a rescission." 5 Thompson, Real Property, 427, 428, sec. 4313. See *Baker v. Maxwell*, 99 Ala. 558; *Groppengiesser v. Lake*, 103 Cal. 37; *Morris v. Courtney*, 120 Cal. 63; *Woodruff v. Garner*, 27 Ind. 4; *West v. Wright*,

98 Ind. 335; *Bullitt v. Farrar,* 42 Minn. 8; *Vaughn v. Smith,* 34 Or. 54. And this court is also committed to the principle: "The plaintiff is entitled to relief if the representations were a material inducement to the contract, although he may have made efforts to discover the truth thereof, and did not rely wholly upon the veracity of defendant." *Foley v. Holtry,* 43 Neb. 133. See, also, *Brucker v. Kairn,* 89 Neb. 274; *Abts Co. v. Cunningham,* 95 Neb. 836; *McCandless v. Greusel,* 103 Neb. 472. It would seem that the evidence in this case considered *de novo* fairly sustains the conclusion that defendant executor was guilty of legal fraud, and under the facts in this case there can be no question but the railroad right of way, together with its tracks thereon extending over and across this lot, in the light of the use made of it, constituted an "incumbrance" both in the technical sense of the term as well as when employed in ordinary usage. 4 Thompson, Real Property, 620, sec. 3510. It seems the measure of damages applicable to the situation before us is: "If the incumbrance is practically inextinguishable, as in case of a permanent easement, the measure of damages is the difference in the value of the land without and with the incumbrance." 4 Thompson, Real Property, 686, sec. 3587, and cases cited therein.

On the basis that what has occurred amounts to no more than a "mistake," it must be conceded that as a necessary result the estate of Bartlett L. Paine has been enhanced in the sum of $1,500. "If a party in ignorance or mistake of his rights and interests execute a conveyance, although no fraud is practiced upon him, a court of equity will relieve against the instrument; for it is against good conscience to take advantage of one's ignorance to obtain his property. Thus, if an heir, in ignorance of the value of his inheritance, or in ignorance that some legacies or devises had lapsed, should convey his interest for an inadequate consideration, equity would convert the purchaser into a trustee. And if the purchaser should have full knowledge, or should stand in any confidential relation, or should practice the slightest art to mislead or conceal, the

equities would of course be much stronger against the transaction; but these circumstances are not necessary to avoid the conveyance, for relief will be granted where both parties are in a mutual state of ignorance, or are laboring under the same mistake." 1 Perry, Trusts and Trustees (7th ed.) 311, sec. 184.

It would seem under the authorities just referred to, which appear to be applicable to the facts in the instant case, that the fraud established constitutes even a stronger equity against the transaction as a basis of rescission. However, it is also to be remembered that upon the discovery of the mistake the plaintiff in the instant case tendered a reconveyance of all that he received in the transaction, and demanded relief in the alternative from the executor and the Paine estate represented by it. Therefore, assuming for the purpose of this discussion, but not deciding, that the term "mistake" is properly applicable to the transaction before us, it having resulted in the augmentation of the estate of Bartlett L. Paine in the sum of $1,500, to this extent the trust of the executors has been unjustly enriched and the proper application of the principles above quoted would result in a recovery by the plaintiff herein irrespective as to whether the false statements relied on amount to "legal fraud" or are properly designated by the term "mistake."

A somewhat similar question was presented to the supreme court of Iowa in the case of *Deery v. Hamilton*, 41 Ia. 16. In that case an executor borrowed money under such circumstances that rendered the entire transaction invalid as to his trust, but the estate received the money and actually benefited thereby. It was accordingly held: "The estate has received the benefit of the money which was advanced by the defendant. It ought in good conscience to repay it with legal interest. This is not required because of the contract under which the money was borrowed, which is invalid, but on the ground that the estate has had the benefit of the money received from defendant." Under the circumstances detailed in the evidence in the case before us it would seem that it is against "good con-

science" to take advantage of one's ignorance to obtain his money. Even if we accord full faith and credit to the contentions of the defendant as to its honesty of purpose, still it was the clear understanding of all parties that plaintiff should receive and become the legal owner of lot 3 as an entirety. This was the true consideration for which he had paid his money, but contrary to honest belief of all to the extent of a portion of the lot occupied by the railroad company and of the value of $1,500 this proved to be a legal nullity. As to this portion of the consideration plaintiff acquired practically nothing. He paid this $1,500 as part of the $5,000 and for it received nothing in return. Upon the plainest principles of right, therefore, the consideration to the extent of $1,500 should be restored to him. Nor would this operate unjustly upon the defendant executor or the Paine estate represented by it. As to the portion of the lot covered by this $1,500 incumbrance it was supposed that the Bartlett L. Paine estate had something of value to sell, and which on its behalf the defendant executor undertook to transfer to the plaintiff, but it turned out that this portion of the lot, due to the presence thereon of the tracks in question, had no existence in fact from the standpoint of value. Having by misapprehension procured something for its trust estate without parting with anything, why should not restoration be made? Indeed, it would appear to the extent of the $1,500 incumbrance nothing was conveyed on behalf of the estate, nothing was lost by it, but to that extent the estate was certainly unjustly enriched by receipt of the actual money of plaintiff in a manner which, without reference to the obligations of contract or fraud, "good conscience" demands be restored to the party unjustly deprived thereof. It must be conceded also that as a matter of fact the plaintiff in the instant case entered into a transaction disclosed by this record in reliance upon the representations of the executor acting under our statute in the capacity of a trustee. This executor, or trustee, is now seeking to retain for its estate property which the estate received because of the false representations made by its representa-

tive. The general rule is: "A principal who retains benefits derived from the fraudulent conduct of his agent is chargeable with the instrumentalities employed by the latter in carrying out the fraudulent purpose." *Dresher v. Becker*, 88 Neb. 619; *Tylee v. Illinois C. R. Co.*, 97 Neb. 646; *Nye-Schneider-Fowler Grain Co. v. Hopkins*, 99 Neb. 244.

But, by the clear weight of authority, the application of the principle is not limited to the relation of principal and agent. The language usually employed implies a more extended field. Thus it is said: "One who seeks to take advantage of a contract made for his benefit by another must take it subject to all legal defenses and inherent equities arising out of the contract, such as the fraud of the party procuring it, the nonperformance of conditions, or the right to a set-off, unless the element of estoppel has entered." 13 C. J. 699, sec. 799. See 4 Page, Law of Contracts (2d ed.) 4217, sec. 2393; *Assets Realization Co. v. Cardon*, 272 Pac. (Utah) 204; *Farmers State Bank v. Nicholson*, 36 Wyo. 221; *Fish v. First Nat. Bank*, 150 Fed. 524; *Farris v. Pitts*, 221 Mo. App. 1204. Indeed, this court has said: "It is equally as fraudulent to attempt to enforce a writing executed by mutual mistake in such manner as not to express the real agreement between the parties as it is to procure such a writing by deceit or circumvention." *Story v. Gammell*, 68 Neb. 709. Whether money or property lost or damages suffered because of false representations by the trustee, or by the executor, is under all circumstances within the rule quoted, *quære*, however, we do not find it necessary to determine in this case. The "false representations" or "mutual mistake" in the instant case relate to the property owned by and conveyed on behalf of the estate of Dr. Paine in a transaction of which the "false representations" or "mutual mistake" constituted an integral part, resulting in a deficiency in the property attempted to be conveyed. The $1,500 loss or damage resulting therefrom to the plaintiff has accrued to the defendants in the form of unintended profits and constitutes an unjust augmentation of the estate thus rep-

resented by the executor. The gravamen of the instant action is not a claim for damages sustained by the plaintiff because of a breach of a continuing contract whether executory or executed. It is based upon the equitable right of rescission. True, the decree of the district court in this case, in terms granting alternative relief, purports to award damages.

It must be conceded, however, that the rule is: "A misrepresentation as to quantity or acreage may constitute a fraud on the part of the vendor for which the purchaser may rescind." 27 R. C. L. 645, sec. 407. Still, it is well established by precedent that the inherent discretion of a court of equity, in an action for rescission, instead of decreeing an unconditional rescission to the extent of fully restoring the parties to their former status and condition with a view of rendering its relief complete and more appropriate to the peculiar case before it, "Instead of granting relief by way of rescission, * * * may and frequently does grant the purchaser an abatement from the purchase price in case of a deficiency in quantity." And, indeed, "The purchaser has been restricted to this form of relief and a rescission of the transaction denied even where the vendor was guilty of fraudulent representations as to quantity." 27 R. C. L. 645, sec. 407. The provisions therefore which appear in the decree entered in the district court in the present case for damages must be deemed as an "abatement from the purchase price" as an incident of rescission and not identical with damages to which a party is entitled in an action at law for the breach of a valid contract. In other words, the liability of the defendant in the instant case is based, not upon what the plaintiff lost by reason of the fraud or the mutual mistake, but rather as limited to what the defendant estate possesses and which was obtained because of the acts and representations of its executor. The present action does not sound in tort, nor does it necessarily involve the limitations imposed by the principles of common law proceedings upon the proper use of common counts such, for instance, as "for money had and received." While on the question of

practice the authorities are not harmonious, still on the question of equitable right of recovery as applied to the facts in the instant case there seems to be no serious conflict. *Goodspeed v. Fuller,* 46 Me. 141; *Way v. Cutting,* 17 N. H. 450; *Murdock v. Gilchrist,* 52 N. Y. 242; *Wright v. Dickinson,* 67 Mich. 590. It follows in view of our liberal Code provisions the decree of the district court, though possibly more favorable to the defendant than they of right might demand, is in conformity with the principles of equity, supported by the evidence, and constitutes a proper disposition of the case.

The defendant further contends that the executor in this case was not guilty of legal fraud, and that, being liable, if at all, on the basis of an honest mistake made, section 8517, Comp. St. 1922, is controlling, and an action based on mutual mistake is not continued four years after the discovery of the mistake. This court has apparently, in express terms, announced a contrary conclusion. *Shanahan v. Fidelity-Phenix Ins. Co.,* 117 Neb. 132; *Carter v. Leonard,* 65 Neb. 670; *Pinkham v. Pinkham,* 60 Neb. 600; *Ainsfield v. More,* 30 Neb. 385. Appellant favors this court with a learned discussion of these cases, the conclusion of which is that the point here involved has never been the controlling point in any of the judgments rendered by this court and the statements announced in each of the decisions enumerated amount to no more than *obiter dictum,* and the rule apparently announced therein by this court is in contravention of the express terms of the statute. Conceding, *arguendo,* appellant's premise that to render a statement of law authority as a precedent it must be involved in and presented by the facts of the case then for consideration and be made a "controlling point of any judgment rendered" therein, manifestly the cases cited are not for reexamination in the present opinion. True, in appellant's brief we find this statement: "This action was not commenced until November 12, 1927." It must be admitted that under appellant's contention this fact is essential to present the question of the application of the statute of limitations in the instant case. There is, how-

ever, no reference made in the briefs, as required by the rules of this court, to a place in the transcript or bill of exceptions where this statement can be substantiated and a careful search of both fails to supply this information. Section 8523, Comp. St. 1922, provides: "An action shall be deemed commenced, within the meaning of this chapter (limitations), as to the defendant, at the date of the summons which is served upon him." Assuming this fact was one of which judicial notice could properly be taken by the trial court, in view of the records in its presence, that tribunal found against the appellant here. This tribunal is limited to the transcript and bill of exceptions filed herein, and stipulations of counsel are not even permitted to supply the omissions thereof. The necessary conclusion is that, as now advised, no consideration can properly be given to the point urged.

It follows, therefore, that the decree entered by the trial court is correct and its judgment is

AFFIRMED.