In the Matter of Thano MASTERS, Individually and d/b/a Thano's Lamplighter, Debtor.

Thano MASTERS, Plaintiff,

v.

DELLWORTH ASSOCIATES, et al., Defendants.

Bankruptcy No. 82–06106–B.

United States Bankruptcy Court, E.D. Michigan, S.D.

Jan. 16, 1984.

George V. Cartsos, Detroit, Mich., for plaintiff.

H. Joachim Schmidt, Ann Arbor, Mich., for defendants.

## OPINION

GEORGE BRODY, Bankruptcy Judge.

This controversy involves an objection by the debtor to a claim filed by two creditors of the debtor.

In November of 1979, Thano Masters opened a restaurant in Ann Arbor, Michigan named Thano's Company, a Michigan corporation, of which Masters was the sole stockholder. The corporation was in financial difficulty from the day it opened. The corporation had financed the purchase of substantially all of its equipment with a loan from the National Bank of Ann Arbor. When the restaurant opened, it owed the bank $165,000 secured by a lien on the equipment. The debt was to be repaid at the rate of $4,085 per month. The corporation also acquired nine items of equipment by lease purchase agreements from two corporations, Leasco, Inc. and Hobart Corporation. The Leasco lease provided for the payment of $1,700 a month over a three-year period; the Hobart lease for a payment of $211.00 a month over a five-year period. Each of the leases granted the corporation an option to purchase at the end of the respective terms by payment of ten percent of the purchase price. The lessors recognized that the lease was not a true lease but a security interest, M.C.L. 440.-1201(37)(b),[1] and filed a financing statement to perfect their secured status. M.C.L. § 440.9408.[2] In addition, the debtor individually was indebted to the bank for $344,461.12, which he had borrowed to purchase the building in which the restaurant was located. The debt was secured by a fifteen-year mortgage with monthly pay-

1. The pertinent language in M.C.L.A. § 440.-1201(37)(b) reads as follows:

 Whether a lease is intended as security is to be determined by the facts of each case; however, (a) the inclusion of an option to purchase does not of itself make the lease one intended for security, and (b) an agreement that upon compliance with the terms of the lease the lessee shall become or has the option to become the owner of the property for no additional consideration or for a nomi-

nal consideration does make the lease one intended for security.

2. M.C.L.A. § 440.9408a provides that a lessor may file a financing statement to perfect a security interest in the leased property. The financing statement if filed is not a factor in determining whether the lease is or is not intended as security. However, if it is determined that the lease is so intended, a security interest which attaches to the leased goods is perfected by such a filing.

ments of $4,416.10.[3] The restaurant was unable to generate sufficient funds to carry its debt burden and to provide for the necessary operating expenses. Masters, unable to provide financial assistance personally, attempted unsuccessfully to obtain additional financing from the bank. In desperation, he turned to friends for help. He approached a Dr. McCabe to inquire whether the doctor would be interested in investing in the restaurant. Dr. McCabe was not, but introduced the debtor to a Jonathan Burdell. The debtor met with Burdell and fully discussed the debtor's financial difficulties. A series of meetings were held by the debtor with Burdell and an associate, a Dennis Whitworth. At the conclusion of these meetings, Burdell and Whitworth informed the debtor that they had no desire to provide investment capital, but suggested an alternative solution to his and the corporation's financial problems—a purchase and lease-back arrangement. This proposal was acceptable to the debtor and the parties entered into an agreement whereby the debtor agreed to sell the building and equipment to Burdell and Whitworth for $805,000, and thereafter Burdell and Whitworth would lease the building and equipment to Thano's Company. The agreement was originally to be consummated by February 13, 1981. However, Burdell and Whitworth were unable to obtain the necessary financing to purchase the building and equipment simultaneously by that date. The agreement was then modified to provide that Burdell and Whitworth would first purchase the building and thereafter purchase the equipment in three separate transactions when they acquired the necessary financing. Burdell formed a partnership named Dellworth Associates which purchased the building for $513,000, its appraised value, and simultaneously therewith leased the building to Thano's Company for eleven years. The lease provided for payment of $73,000 for the first year, with minimum annual increases of eight and one-half percent. Additionally, the restaurant was to pay the partnership five percent of gross sales in excess of $600,000 per year.

Thereafter, Burdell and Whitworth negotiated with Masters for the purchase of the restaurant equipment. On June 12, 1981, approximately one-third of the restaurant equipment was sold for $94,950 by the corporation to a second partnership (Dellworth Associates II) organized by Burdell and Whitworth. To finance this transaction, the partnership advanced $49,000 in cash and borrowed the remainder of the necessary funds from the bank on a note that was guaranteed by the debtor. Burdell did not obtain an appraisal of this equipment prior to the sale. The purchasing partnership then leased the property back to the corporation for eleven years. The lease payments for the eleven years totalled approximately $550,000. This transaction reduced the corporation's debt to the bank to $101,508.58. The monthly payments were correspondingly reduced to $2,683.33.

In November of 1981, before Burdell and Whitworth could arrange to purchase the remaining equipment, the debtor and Thano's Company defaulted on the lease agreements. When the debtor and Thano's Company failed to make their payments, the partnerships were unable to fulfill their commitment to the bank. The bank thereupon instituted proceedings to foreclose its lien on the building and eventually purchased the building at a foreclosure sale. The bank also took possession of, but has not yet disposed of, the restaurant equipment. On October 27, 1982, Thano Masters filed this chapter 13 proceeding.[4] The partnerships filed a claim in this proceeding for $773,000. The partnerships contend that during the negotiations for the sale of the restaurant equipment, Masters represented that he owned all of the equipment that the partnership purchased on July 12, 1981, whereas nine pieces of equipment with a

---

3. The monthly payment was broken down as follows: $3,978.10 for principal and interest, and a tax escrow of $438.00.

4. The corporation, Thano's Company, filed a chapter 11 proceeding on January 13, 1982. This proceeding is still pending.

purported value of $79,490 were in his possession pursuant to leases, and that it was induced to purchase the equipment by virtue of this representation and, therefore, the debtor is liable personally for all losses it incurred or will incur as a result of the purchase and lease-back transactions.

 Generally, in an action based upon fraud the plaintiff must establish the following:

(1) there must be a material representation by the defendant; (2) the representation must be false; (3) it must be made with knowledge of its falsity; (4) it must be made with the intention that the plaintiff act on it; and (5) the plaintiff must have acted upon it and suffered injury for which he sues.

*United States v. Cripps,* 460 F.Supp. 969, 975 (E.D.Mich.1978). However, the claim filed by the partnerships arises out of a contract negotiated in Michigan and, therefore, whether a claim exists is to be determined by reference to Michigan law. In Michigan, the defense of innocent misrepresentation is not available to a defendant in a fraud action arising out of a contractual misrepresentation. *United States Fidelity & Guaranty Co. v. Black,* 412 Mich. 99, 313 N.W.2d 77 (1981); *Converse v. Blumrich,* 14 Mich. 109 (1866).[5] Therefore, the plaintiff to prevail must establish only:

(1) that the defendant made a material misrepresentation; (2) that the representation was false; (3) that the plaintiff did in fact rely upon it; and (4) that he thereby suffered injury.

*United States Fidelity & Guaranty Co. v. Black.*

An analysis of the facts giving rise to the partnerships' claim clearly establishes that the claim has no merit—the partnerships have not established that the plaintiff's statement was materially false; that they relied upon the statement; and, finally, even if the statement were false, and had been relied upon, the partnerships waived any fraud claim they might have had.

 A statement is not true or false in the abstract. Whether it is true or false depends upon the frame of reference within which it was made. The debtor obtained the restaurant equipment from various sources. Some was purchased from a restaurant equipment distributor, some was purchased from an Ann Arbor restaurant that closed, and the remainder was obtained by virtue of the lease purchase agreements. All of the property was encumbered by the lien of the National Bank and Trust Company of Ann Arbor, which had financed substantially all of the purchases, and by the liens of the lessors of the equipment. Ownership is an ambiguous term. The fact that property purchased is subject to a security interest does not negate ownership. To a layman, ownership is equated with purchase regardless whether the total purchase price has or has not been paid and regardless whether the unpaid part of the purchase price is secured or unsecured. The statement made by the debtor that he owned the property was not a materially false statement.

 Moreover, "fraud is not perpetrated upon one who has full knowledge to the contrary of a representation." *Montgomery Ward & Co. v. Williams,* 330 Mich. 275, 284, 47 N.W.2d 607, 611 (1951). Admittedly, the debtor did not have unencumbered ownership of the property that was sold to the partnership. If the debtor's representation as to ownership was intended as a representation that such property was unencumbered, it was false. Burdell, however, knew that the property was encumbered—that the bank had a security interest in the property. He knew, therefore, that if the debtor's representation as to ownership was intended as a representation that he owned the property free of encumbrances, that the representation was false. "Knowledge of

---

**5.** Michigan, however, is not the only state that has abandoned the requirement of scienter in actions of fraud arising out of contractual misrepresentation. *See, e.g., Gulf Electric Co. v. Fried,* 218 Ala. 684, 119 So. 685 (1928); *West-*

*erman v. Corder,* 86 Kan. 239, 119 P. 868 (1912); *Maser v. Lind,* 181 Neb. 365, 148 N.W.2d 831 (1967); *McDaniel v. Hodges,* 176 Va. 519, 11 S.E.2d 623 (1940).

the falsity of representations is inconsistent with reliance thereon." *McIntyre v. Lyon*, 325 Mich. 167, 174, 37 N.W.2d 903, 906 (1949). This is so, even though the representation may be false for more than one reason. "[O]ne cannot rely on a representation where he knows other representations in the same transaction are false." *Phillips v. Smeekens*, 50 Mich.App. 693, 697, 213 N.W.2d 862, 864 (1973). Burdell was a sophisticated businessman. He was aware that a person may own property free and clear or subject to encumbrances. If the corporation's equity in the personal property proposed to be purchased was of concern to him, questions to elicit this information could have been simply and easily framed.

Additional established facts negate reliance by Burdell on the alleged misrepresentations by the debtor as to the corporation's ownership interest in the restaurant equipment. Burdell did not have the equipment appraised to determine what equity, if any, Thano's Company had in the equipment. He did not do so because he was not concerned with the value of the equipment or the debtor's equity in the equipment. Burdell was concerned solely with realizing lease income from the property. The price he agreed to pay was based, as he testified, not upon the value of the equipment, but on what he believed the traffic would bear—a determination made by him based upon an examination of the books and records of the debtor.

Finally, even assuming that the representation made by the debtor was false and that they relied upon it to their detriment, Burdell and Whitworth waived any cause of action based upon the alleged fraudulent conduct of the debtor. Burdell learned that nine items purchased by the partnerships were encumbered by Leasco, Inc. and Hobart Corporation, the entities with whom the debtor entered into lease purchase agreements, within a few days after the sale was consummated. Burdell thereupon requested that the debtor replace the nine leased items with other property. The debtor agreed to do so, and a revised bill of sale and equipment list were prepared and executed by the debtor. "[W]hen a party claiming to have been defrauded, enters, after discovery of the fraud, into new arrangements or engagements concerning the subject-matter of the contract to which the fraud applies, he is deemed to have waived any claim for damages on account of the fraud." *Schied v. Bodinson Mfg. Co.*, 79 Cal.App.2d 134, 179 P.2d 380, 385 (1947) (quoting *Burne v. Lee*, 156 Cal. 221, 104 P. 438, 440 (1909) (emphasis omitted)). This is so unless the modification agreement reserves the right to pursue the claim for damages based on the fraud. *Kintz v. Galvin*, 219 Mich. 48, 188 N.W. 408 (1922); *see, also, Dinius v. Bolibrzuch*, 270 Mich. 618, 259 N.W. 156 (1935). The modified agreement substituting property acceptable to Burdell for the leased property did not reserve the partnerships' right to pursue a claim for damages based on the alleged fraud. Whatever fraud claim the partnerships may have had was waived.

For the foregoing reasons, the claim of the partnerships is disallowed.

An appropriate order to be submitted.