**In re David B. HAMES, individually and f/d/b/a D & N Logging, Debtor.**

**NORTHERN STATE BANK OF VIRGINIA, Plaintiff,**

**v.**

**David B. HAMES, Defendant.**

**Bankruptcy No. 5–84–68.
Adv. No. 5–84–23.**

United States Bankruptcy Court,
D. Minnesota,
Fifth Division.

Oct. 17, 1985.

David T. Stall, Virginia, Minn., for plaintiff.

Gerald E. Maher, Duluth, Minn., for defendant.

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER FOR JUDGMENT

GREGORY F. KISHEL, Bankruptcy Judge.

The above-captioned matter came on for trial before the undersigned United States Bankruptcy Judge on August 8, 1985. Plaintiff appeared by its attorney, David T. Stall. Defendant David B. Hames (herein-

after "Debtor") appeared personally and by his attorney, Gerald E. Maher. Upon the evidence adduced at trial, the arguments of counsel, and all of the other files and records herein, the Court makes the following Findings of Fact, Conclusions of Law, and Order for Judgment.

### FINDINGS OF FACT

Debtor filed his Voluntary Petition under Chapter 7 of the Bankruptcy Code in this Court on March 7, 1984. His Schedule A–3 included an entry for a debt in favor of Plaintiff in the scheduled amount of $6,000.00. This debt is the subject of these adversary proceedings for determination of dischargeability.

Between 1978 and the early months of 1982, Debtor was engaged in the trade of logging in northern St. Louis County, Minnesota. During the first several years of his logging business, Debtor was also employed as a millwright by United States Steel at its Minntac plant.

Debtor had taken out a loan from Plaintiff on August 29, 1979, secured by a D–6 Cat.[1] On May 27, 1980, Debtor executed a Promissory Note in the amount of $4,169.28 in favor of Plaintiff, on a loan for the purchase of a Franklin 120B skidder for use in his logging operations. Under a Security Agreement of the same date, Debtor granted Plaintiff a security interest in the skidder. Plaintiff duly perfected this security interest by filing in February, 1981.

Debtor's logging business failed to generate sufficient cash flow during 1981, and his loan with Plaintiff fell into delinquency. During a conversation with Plaintiff's Vice-President Lawrence J. Shustarich in November, 1981, Debtor advised him that he had traded the skidder in on the purchase of a feller-brancher (an implement used in logging). Plaintiff had not previously authorized the trade-in. Mr. Shustarich could have elected to take recourse against the skidder in the hands of Debtor's trans-

1. Neither party introduced extensive evidence on this transaction and Plaintiff apparently does not contend that it was fraudulently entered by Debtor.

feree, but he did not do so; rather, he asked Debtor to give Plaintiff replacement security. By means of a Supplemental Security Agreement executed on November 19, 1981, Debtor granted Plaintiff a security interest in a 1970 Case 400SK skidder. At trial, Plaintiff did not present testimony as to whether Mr. Shustarich inquired about the existence of prior security interests against this skidder, though Mr. Shustarich did testify that he would not have accepted a security interest in the Case skidder as replacement collateral had he known that Plaintiff could not take a first priority security interest against it. The Supplemental Security Agreement provides in pertinent part:

... this Security Agreement is made subject to the terms and conditions of the Prior Security Instrument, all of which are by this reference made a part thereof and all of which shall apply to the Collateral described in this Security Agreement as well as to those described in the Prior Security Instrument.

The May 27, 1980 Security Agreement on the Franklin skidder provides in pertinent part as follows:

Debtor has or will acquire title to and will at all times keep the Collateral free of all liens and encumbrances, except the Security Interest created hereby ... No financing statement covering all or any part of the Collateral, except any which may have been filed by the Secured Party, is on file in any public office ... The Debtor ... will defend the Collateral against all claims and demands of all persons at any time claiming the same or any interest therein ...

Mr. Shustarich came away from this transaction with the belief that Plaintiff now had a first priority security interest in the Case skidder.

When Debtor's default on the Note continued through early 1983, Mr. Shustarich decided to foreclose on Plaintiff's security interest in the Case skidder. During a conversation with the local International Harvester Credit Corporation (hereinafter "IHCC") representative, however, Mr. Shustarich found out that the skidder had been subject to a prior security interest in favor of IHCC; IHCC had repossessed and disposed of it already. As a result, in April, 1983, Mr. Shustarich again called Debtor in to discuss the status of his accounts. At that time, Debtor was obligated to Plaintiff on three different Notes: the financing for the D–6 Cat; the financing now secured by the Case skidder; and Debtor's guarantee of a friend's small loan (of a balance of about $500.00). Debtor advised Mr. Shustarich that the D–6 Cat was now inoperable and valueless, and that he had abandoned it at a job site. Because the loss of Debtor's equipment left Plaintiff completely unsecured, Mr. Shustarich again pressed the issue of security and assurance of payment with Plaintiff.

By this time, Debtor's logging business had failed. At some point in 1982 he had taken employment as a logger with George Luecken of Gheen, Minnesota. During the course of their conversation, Debtor verbally gave Mr. Shustarich sufficient information to complete a financial statement which Debtor then executed on April 18, 1983. The financial statement was on Plaintiff's standard form and consisted of a cursory review of assets, liabilities, and employment. After reviewing it, Mr. Shustarich concluded that Debtor now had minimal assets and that his financial statement was "very weak". However, he decided that security in the form of a voluntary assignment of part of Debtor's wages was "better than nothing", and requested Debtor to execute one in favor of Plaintiff. Debtor did so on April 28, 1983, to assure payment on a new and final Note in the face amount of $9,116.58 which consolidated the three older Notes. Plaintiff continued to receive weekly payments via the wage assignment until Debtor filed his Petition in this Court.

With the filing of Debtor's Petition, Plaintiff discontinued its wage assignment. Plaintiff alleges the total unpaid principal and accumulated interest on its obligation as of the date of filing of Debtor's Petition to be $9,612.28.

## CONCLUSIONS OF LAW

Plaintiff challenges the dischargeability of Debtor's debt to it under 11 U.S.C. § 523(a)(2), which provides in pertinent part as follows:

(a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—

.      .      .      .      .

(2) for obtaining money, property, services, or an extension, renewal, or refinance of credit, by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

(B) use of a statement in writing—

(i) that is materially false;

(ii) respecting the debtor's or an insider's financial condition;

(iii) on which the creditor to whom the debtor is liable for obtaining such money, property, services, or credit reasonably relied; and

(iv) that the debtor caused to be made or published with intent to deceive;[2]

■ The burden of proving all elements under both § 523(a)(2)(A) and § 523(a)(2)(B) is entirely on the parties seeking to have a debt found nondischargeable. *In Re Klein*, 20 Bankr. 119, 121 (Bankr.E.D.Pa. 1982). All elements must be proven by clear and convincing evidence, a burden of proof more stringent than the standard burden in civil cases of a preponderance of the evidence. *In Re Pommerer*, 10 Bankr. 935, 938 (Bankr.D.Minn.1981) (fraud); *In Re Johnson*, 40 Bankr. 756, 758 (Bankr.D. Minn.1984) (fraud); *In Re Barnacle*, 44 Bankr. 50, 53 (Bankr.D.Minn.1984) (fraud); *In Re Harms*, 53 B.R. 134, 140, (Bankr.D. Minn.1985) (false financial statement). The Court will treat the two grounds separately.

### A. § 523(a)(2)(A): FALSE PRETENSES, FALSE REPRESENTATIONS OR ACTUAL FRAUD.

The elements which must be proven to establish nondischargeability of a debt under § 523(a)(2)(A) are as follows:

1. The obtaining of money, property, services, or an extension, renewal, or refinance of credit by a debtor,

2. Using a false representation pertaining to a past or present fact,

3. With knowledge of the representation's falsity, or its assertion as fact with reckless disregard for its truth or falsity,

4. And an intention to deceive the other party or to induce the other party to act upon the representation,

5. Reasonable reliance by the creditor upon the misrepresentation, and

6. Resultant detriment to the creditor. *In Re Pommerer* at 939; *In Re Johnson* at 758.

■ Plaintiff cites Debtor's misrepresentation as to his ability to give Plaintiff a first priority security interest in the Case skidder as the basis for a finding of nondischargeability. In determining dischargeability, the Court is not barred from considering events surrounding the creation of a debt later refinanced. If a loan advanced as a result of fraudulent representations is later consolidated with debts not incurred by fraud, or is later renewed under nonfraudulent circumstances, the Court can examine the circumstances surrounding the original transaction to determine whether a portion of the ultimate indebtedness is nondischargeable. 3 COLLIER ON BANKR. ¶ 523.10 at 523–71 (15th ed. 1984); *In Re Garman*, 643 F.2d 1252, 1260 (7th Cir.1980) (Act case). The Court must, therefore, examine the events surrounding the execu-

---

**2.** Plaintiff's Complaint was not precisely drafted, and appeared to base its cause of action solely on the alleged falsity of the April, 1983 financial statement. After the close of evidence at trial, Plaintiff moved under FED.R.CIV.P. 15(b) to amend its Complaint to conform to the evidence, alleging fraudulent representations as to the status of the encumbrances against the Case skidder as an additional ground. Debtor did not oppose the motion. The Court therefore granted it, though it would have preferred more precise pleading *ab initio* to afford adequate notice to Debtor.

tion of the Supplemental Security Agreement of November 19, 1981.

■ The Court is content that Plaintiff has proven the knowing and intentional use of a false representation by Debtor on November 19, 1981, as well as reasonable reliance by, and resultant detriment to Plaintiff. Debtor testified that he told Mr. Shustarich in the presence of IHCC's local representative that IHCC had a prior security interest in the Case skidder, and that Mr. Shustarich was content to take a second priority security interest. After reviewing the demeanor of witnesses on the stand, as well as all of the surrounding circumstances, the Court cannot attach any credibility to Debtor's testimony on this issue. Mr. Shustarich convincingly testified that he "would not have waived" the security interest in the Franklin skidder had he known that Plaintiff would be relegated to a second priority security interest in the Case skidder. Mr. Shustarich's testimony accords with good commercial practice; it would only be common sense to assure first-priority status in equipment subject to heavy wear and tear, particularly in view of Debtor's prior unauthorized disposition of the Franklin skidder. Debtor tacitly represented via the written terms of the Security Agreement that the Case skidder was free of encumbrances. See In Re Pommerer at 939. He admitted at trial that he was aware of the prior IHCC encumbrance when he executed the Supplemental Security Agreement. His intent to induce Plaintiff to rely on the misrepresentation is readily inferred from all of the surrounding circumstances. In Re Pommerer at 940; In Re Barnacle at 55. Debtor was then in financial distress and had improperly disposed of Plaintiff's initial security. He knew Plaintiff might take recourse against the Franklin skidder in the hands of the party who then held it; this almost certainly would have resulted in a dispute over his rights in the feller-brancher. He needed the feller-brancher to continue his logging operations. He knew Plaintiff needed replacement security and, obviously, hit upon the Case skidder as the probable source. He also knew from prior dealings that Mr. Shustarich would accept his representations as to the value and suitability of proposed security. The surrounding circumstances all strongly suggest he intended to induce Mr. Shustarich to rely on his representation that the Case skidder would afford Plaintiff adequate security.

The Court also finds that Plaintiff reasonably relied upon the misrepresentation, to its resultant detriment. Actual reliance may be proven by circumstantial evidence. In Re Kreps, 700 F.2d 372, 375 (7th Cir. 1983). Plaintiff has proven actual reliance by Mr. Shustarich's testimony that he would not have approved the Case skidder as collateral had he known of the existence of a prior security interest in it. Id. Mr. Shustarich relied on the representation after learning that Debtor had knowingly violated the earlier Security Agreement. This may call into question the reasonableness of his reliance on the representation. However, nothing in his prior dealings with Plaintiff suggested that Plaintiff might misrepresent any factor relevant to the suitability of proferred collateral. This Court has previously expressed its unwillingness to judicially prescribe procedures for the evaluation of credit-worthiness, where a creditor's procedure at hand otherwise comports with industry standards and there are no "red flags" which suggest independent investigation of a debtor's representations is appropriate. In Re Harms at 141, n. 3. It will not do so in this case; Plaintiff's reliance must be found to be reasonable. Plaintiff forbore from pursuing its prior collateral in favor of taking rights in security which turned out to have little or no value. This fact standing alone establishes detriment resultant from Debtor's misrepresentation.[3]

---

**3.** Plaintiff did not plead or argue willful and malicious conversion of its interest in the Franklin skidder under § 523(a)(6) as a ground for nondischargeability. Even if it had, the Court would have been constrained to find that it ratified Debtor's disposition by Mr. Shustarich's actions.

However, Plaintiff has failed to show that on November 19, 1981 Debtor obtained money, property, or services from Plaintiff, or an extension, renewal, or refinance of credit from it. The only event which took place on or around that date was Debtor's execution of a Supplemental Security Agreement. By its terms, that document was intended to "make more certain the security for the Prior Security Instrument and [afford] additional security for the indebtedness thereunder ..." Debtor received no new cash as a consequence of his execution of the supplement Security Agreement; nor was the obligation secured .by the Franklin skidder then renewed or refinanced. Debtor's misrepresentation resulted only in Plaintiff taking additional, valueless security for a pre-existing debt. It did not induce Plaintiff to extend new credit or to materially alter the terms of the creditor-debtor relationship established under the May 27, 1980 Note. Plaintiff's forbearance from pursuing its prior security or enforcing Debtor's personal liability on the Note, standing alone, is not an "extension, renewal or refinance of credit". *In Re Bacher*, 47 Bankr. 825 (Bankr.E.D.Pa.1985); *In Re Grubbs*, 9 Bankr. 499 (Bankr.M.D.Ga.1981); *In Re Harlan*, 7 Bankr. 83 (Bankr.D.Ariz.1980). *Contra*, *In Re Fields*, 44 Bankr. 322 (Bankr.S.D.Fla.1984).

Plaintiff's argument that Debtor's November, 1981 fraudulent misrepresentation must in some fashion "relate forward" to the negotiation and execution of the April 20, 1983 Note is a nonsequitur. In negotiating the consolidation loan, Mr. Shustarich may have been attempting to minimize the damage that resulted from the taking of the worthless security interest in the Case skidder; however, in April, 1983 he was in no way relying upon Debtor's November, 1981 misrepresentation. Plaintiff has simply failed to prove any causal connection between the misrepresentation and the refinancing that ultimately occurred.

Therefore, because Plaintiff has failed to prove all of the elements of § 523(a)(2)(A) by clear and convincing evidence, its excep-

tion to the discharge of its debt under that subsection must be denied.

**B. § 523(a)(2)(B); FALSE FINANCIAL STATEMENT.**

The elements which must be proven to establish nondischargeability under § 523(a)(2)(B) are set forth succinctly in the statute. *See also In re Harms* 134, 140–142. Because Plaintiff's original Complaint alleges this subsection as a ground for nondischargeability, the Court will examine it. However, no more than brief treatment is necessary. The only financial statement which Plaintiff introduced into evidence was that given by Debtor on April 18, 1983. This financial statement apparently omits some number of substantial debts; it lists as Debtor's obligations only an automobile loan in favor of First Northwestern National Bank of Eveleth and the loans owing to Plaintiff. However, there is no evidence of record that Mr. Shustarich relied upon the recitation of debts in evaluating the disposition of Debtor's obligations in April, 1983. Mr. Shustarich concluded that Debtor's financial statement was "very weak"; it is difficult to see how a more accurate scheduling of debts would have changed his evaluation of likely sources of payment in any way. The Court agrees with Debtor's counsel and concludes that Mr. Shustarich exclusively relied upon the voluntary wage assignment in refinancing Debtor's credit on April 20, 1983; the debt entries on the financial statement were irrelevant to his determination. Thus, to the extent that Plaintiff has shown a "materially false" written statement respecting Debtor's financial condition in April, 1983, it has failed to show either reasonable reliance on its part or intent to deceive on Debtor's part.

Because Plaintiff has failed to prove all of the elements of § 523(a)(2)(B) by clear and convincing evidence, its exception to the discharge of its debt under that subsection must be denied.

**ORDER FOR JUDGMENT**

Based upon the foregoing Findings of Fact and Conclusions of Law, IT IS HEREBY ORDERED, ADJUDGED AND DE-

CREED that Debtor's debt to Plaintiff was not excepted from the discharge in bankruptcy granted to Debtor by this Court's Order of August 8, 1984.

LET JUDGMENT BE ENTERED ACCORDINGLY.