In re Wilbur J. CASTONGUAY and Kimberly Ann Castonguay, Debtor.

ROGER RINKE CADILLAC, INC., Plaintiff,

v.

Wilbur J. CASTONGUAY, Defendant.

Bankruptcy Nos. 86–06513–R, 87–0230–R.

United States Bankruptcy Court, E.D. Michigan, S.D.

Sept. 17, 1987.

James Pidgeon, Bloomfield Hills, Mich., for plaintiff.

Raymond MacDonald, Utica, Mich., for defendant.

## MEMORANDUM OPINION

STEVEN W. RHODES, Bankruptcy Judge.

### I.

This matter is before the Court following trial on the adversary proceeding complaint filed by Roger Rinke Cadillac, Inc., a creditor, against Wilbur J. Castonguay, the debtor, pursuant to 11 U.S.C. § 523(a)(2). Rinke contends that a debt incurred by Castonguay as a result of his fraud in submitting a false odometer mileage statement is non-dischargeable.

Castonguay denies any fraud and denies that Rinke reasonably relied upon the false odometer mileage statement. He contends that he simply followed the instructions of Rinke's salesman in completing the form and that he did not fully read it or understand it. Castonguay further contends that Rinke's acceptance of a promissory note in the amount of $2,000 after Rinke discovered his misrepresentation in the odometer mileage statement constitutes a waiver by Rinke of any fraud claim it may have had.

Rinke denies any such waiver and further contends that this issue was not properly raised in the debtor's pleadings.

### II.

Castonguay executed the odometer mileage statement on April 16, 1986, in connection with his trade-in of a 1981 Cadillac in purchase of a newer model. As a result of the condition of the vehicle and the odometer reading of 50,185 miles, Castonguay was allowed $4,200 as a trade-in credit. In the odometer mileage statement, Castonguay certified that to the best of his knowledge this odometer reading reflected the actual mileage on the vehicle. Castonguay's purchase of his new vehicle was concluded and Rinke took possession of Castonguay's trade-in vehicle.

Later that day, Rinke discovered that the odometer on the trade-in vehicle had "rolled over", and that therefore, this vehicle actually had 150,185 miles on it, rather than 50,185 miles. When confronted with this discrepancy, Castonguay executed a promissory note to Rinke in the amount of $2,000 without interest payable at the rate of $100 per month beginning on April 25, 1986. However, Castonguay never made any payments on this note. Castonguay filed his bankruptcy petition on December 18, 1986.

At trial, three witnesses testified. William Timms testified that he appraised the trade-in vehicle at $4,200 based on the condition of the vehicle and the odometer reading. He further testified that if he had been aware of the actual mileage on the vehicle, he would have appraised the trade-in vehicle at $3,000. After detailing the vehicle, he intended to sell it for $6,500–$6,900, with a minimum of $5,500. The vehicle was eventually sold for $3,400 to an individual who was not concerned about the mileage.

John Monroe testified that he was the salesman for Rinke who handled this transaction. Although his testimony concerning these circumstances in which the odometer mileage statement was completed was somewhat vague, he indicated that as a

general rule he would read the mileage indicated on the vehicle odometer and instruct the customer to write it in the appropriate space on the form. Then he would instruct the customer to check one of three boxes certifying *either* that this odometer reading reflects the actual mileage of the vehicle, *or* that the odometer reading reflects the actual mileage in excess of the mechanical limit of 99,999 miles, *or* that the odometer reading is not the actual mileage and should not be relied upon. Monroe testified that he would then have the customer check one of the next three boxes, certifying *either* that the odometer was not altered, set back or disconnected, *or* that the odometer was altered for repair or replacement purposes and the mileage registered on the repaired or replacement odometer was identical to that before the service, *or* that the odometer was altered for repair or replacement purposes, that it was reset to 0, and that the mileage on the original odometer before repair was "_____ miles." When the customer decides which boxes to check, Monroe asks the customer to initial the check marks, and then sign the form at the bottom.

Castonguay testified that when he executed the form, he knew that the vehicle had "rolled over" and had in excess of 100,000 miles on it. He testified that at the time he filled out and signed the odometer mileage statement, the salesman told him that he was only certifying that the odometer had never been altered, which was true. He further testified that when the representative from Rinke confronted him about the odometer mileage statement, Castonguay asked to rescind the transaction, but this was refused. He then decided to comply with their request to execute a $2,000 promissory note. Finally he testified that at the time he signed the promissory note, he knew he could not make the first payment, and did not attempt to do so because of his financial circumstances.

### III.

11 U.S.C. § 523(a)(2)(A) provides that a discharge under Section 727 does not discharge an individual debtor from any debt for money to the extent obtained by false pretenses, a false representation, or actual fraud.

Rinke has the burden of proof by clear and convincing evidence. *In re Martin (Martin v. Bank of Germantown)*, 761 F.2d 1163 (6th Cir.1985); *Knoxville Teachers Credit Union v. Parkey*, 790 F.2d 490 (6th Cir.1986).

3 *Collier on Bankruptcy* ¶ 523.08(5) at 523–50 (15th ed. 1987), states, "Actual fraud, by definition, consists of any deceit, artifice, trick, or design involving direct and active operation of the mind, used to circumvent and cheat another—something said, done or omitted with the design of perpetrating what is known to be a cheat or deception."

■ Moreover, such a fraud must involve moral turpitude or intentional wrong; fraud implied in law which may exist without imputation of bad faith or immorality is insufficient. It must affirmatively appear that the false representations were knowingly and fraudulently made and that they were relied upon by the creditor. *Id.* at ¶ 523.08(4).

### IV.

■ In this case, it is clear that the odometer mileage statement submitted by Castonguay was false. Thus, the first issue is whether Castonguay submitted this false statement with the intent to defraud Rinke.

In the circumstances and based upon the Court's evaluation of the credibility of the witnesses, the Court concludes that Castonguay did knowingly submit a false odometer mileage statement to Rinke with the intent to defraud. As noted, Castonguay admitted knowing at the time he submitted the statement that the trade-in vehicle actually had in excess of 100,000 miles. Nevertheless, he contended that he did not intend to defraud Rinke because he thought he was only certifying that the odometer had not been altered, as suggested by the salesman.

This contention must be rejected, not only because it lacks credibility, but also

because the odometer mileage statement form itself was clear in the choices it gave to Castonguay. He could either certify that the odometer reading reflected the actual mileage, or he could certify that the odometer reading reflected the actual mileage in excess of the odometer limit of 99,-999 miles. Moreover, there is a specific warning in bold print at the top of the statement to the affect that there are penalties for an inaccurate or untruthful statement. Finally, it was clear that this was not the first occasion upon which Castonguay had been requested to submit an odometer mileage statement. Accordingly, the Court concludes that Castonguay knowingly and intentionally submitted to Rinke this false odometer mileage statement with intent to defraud.

### V.

Moreover, it is clear that Rinke relied upon the odometer mileage statement indicating that the trade-in vehicle had only 50,185 miles on it. Plainly, if Castonguay had revealed the truth, Rinke would have substantially reduced the trade-in credit.

In this regard, the Court specifically rejects Castonguay's argument that Rinke's reliance upon the odometer mileage statement was not reasonable in light of the vague or misleading instructions concerning the statement given to Castonguay by Rinke's salesman. In *In re Martin,* 761 F.2d at 1166, and in *Knoxville Teachers Credit Union v. Parkey,* 790 F.2d at 492, the court held that the requirement of reasonable reliance under Section 523(a)(2)(B) is not "a rigorous requirement, but rather is directed at creditors acting in bad faith." In *In re Phillips (Coman v. Phillips),* 804 F.2d 930, 932–33 (6th Cir.1986), this standard was adopted for cases under Section 523(a)(2)(A). Thus, the focus is upon whether Rinke proceeded in good faith.

The Court concludes that Monroe did not mislead Castonguay concerning the form, and that the form was clear enough to Castonguay in its instructions and indications. To the extent that Castonguay chose not to read the form or follow its instructions, that must be considered part of his plan to defraud Rinke. There was no evidence that Rinke acted in bad faith here.

Accordingly, the Court concludes that Rinke did rely upon the odometer mileage statement and that this reliance was reasonable in the circumstances.

### VI.

With regard to the debt that arose as a result of Castonguay's fraud, the Court concludes that the amount agreed upon by the parties at the time, $2,000, is the amount of the debt incurred by the debtor's fraud.

Accordingly, the Court concludes that Rinke has established by clear and convincing evidence that it is entitled to a judgment in the amount of $2,000, non-dischargeable under 11 U.S.C. § 523(a)(2)(A).

### VII.

As noted above, Castonguay contends that Rinke's acceptance of a promissory note after its discovery of the fraud constitutes a novation and a waiver of Rinke's fraud claim. In support, Castonguay cites *In the Matter of Masters (Masters v. Dellworth Associates),* 37 B.R. 72 (Bankr.E.D. Mich.1984). The Court rejects this contention for two reasons. First, *Masters* is distinguishable. In that case, the debtor's secured creditor determined that the debtor had falsely represented that he owned the collateral when in fact the debtor leased it. Upon discovery of this, the secured creditor insisted that the debtor give a security interest in other unencumbered property, which the debtor did. The court held that the secured creditor waived his fraud claim against the debtor by accepting the new property as security, citing authority for the point that when a party claiming to have been defrauded enters into a new arrangement after discovery of the fraud, concerning the subject matter of the contract to which the fraud applies, he is deemed to have waived his fraud claim. *Id.* at 76.

In the present case however, Castonguay's promissory note was not a "new

arrangement" concerning the subject matter of the first contract. It was an additional agreement by which Castonguay promised to repay the money he owed to Rinke as a result of his fraud. In *Masters,* there was a novation of the parties' agreement when the unencumbered collateral was substituted for the encumbered collateral; in this case, there was no such novation. *See Matter of Matera (Carini v. Matera),* 436 F.Supp. 947 (E.D.Wis.1977). Rather, this case is more like several in which a repayment agreement or a promissory note is held not to bar the creditor's claim that the underlying debt was incurred by fraud. *See, e.g., Greenberg v. Schools,* 711 F.2d 152 (11th Cir.1983); *In re Hames (Northern State Bank of Virginia v. Hames),* 53 B.R. 868 (Bankr.D.Minn. 1985); and *Matter of Dean (United States Fire Insurance Company v. Dean),* 9 B.R. 321 (Bankr.M.D.Fla.1981).

Second, even if the *Master*'s rule does apply, the circumstances of Castonguay's execution and delivery of the promissory note would nullify Rinke's waiver of its fraud claim. As noted, Castonguay testified that he did not intend to make the regular monthly installment payments on the note, due to his financial circumstances. In that event, Castonguay's promissory note must be seen only as part of his continuing effort to defraud Rinke. In these circumstances, the Court must reject Castonguay's waiver defense.[1]

## VIII.

The final issue to be addressed is Rinke's contention that it is entitled to triple damages pursuant to 15 U.S.C. § 1989. The Court concludes that in the context of 11 U.S.C. § 523(a)(2), this contention must be rejected. Section 523(a)(2) states that a "debt for money obtained by fraud" is non-dischargeable. Here, as noted above, the debt incurred by Castonguay as a result of his fraud is $2,000. The liability for additional damages resulting from 15 U.S.C. § 1989 is not a debt for "money obtained

by fraud"; it is a debt for money damages imposed by law.

A judgment is herewith entered in the plaintiff's favor in the amount of $2,000, non-dischargeable under 11 U.S.C. § 523(a)(2).

---

1. In light of this result, it is unnecessary to address Rinke's assertion that the debtor did not properly assert the waiver defense in his pleadings.