FRED MASER ET AL., APPELLEES, v. RAY V. LIND ET AL., APPELLANTS.

148 N. W. 2d 831

Filed February 17, 1967. No. 36363.

Kier, Cobb & Luedtke, for appellants.

Joseph J. Cariotto, for appellees.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, SMITH, and McCOWN, JJ., and POLLOCK, District Judge.

POLLOCK, District Judge.

The purchasers of real estate sued the vendors to recover damages for fraud, claiming reliance upon their representation that the buildings were "in good sound condition" when, in fact, they were seriously damaged by termites. The verdict of the jury was for the plaintiffs in the amount of $3,143 and defendants appeal.

The plaintiffs Fred Maser and Helen F. Maser are husband and wife and the defendants, Ray V. Lind and Ralph F. Lind are brothers. Involved is real estate described as Lots 11 and 12, Block 5, Second East Park Addition to the City of Lincoln. The buildings consisted of a "large house" with apartments, a "small house," and a garage.

Plaintiffs had lived about 3 blocks away. Fred Maser testified that he had never encountered termites, had not known what a termite was, and had never heard of a termite. Before dealing with defendants he was employed in the manufacture of telephone switches. At the time of the trial he was 49 years of age.

Defendants showed plaintiffs through the houses on two occasions, one of them consuming as much as an hour and a quarter to an hour and a half. Defendants said they had put a new floor in the kitchen and bathroom of the small house. The reason was not discussed.

Plaintiffs met with defendant Ray V. Lind on May 25, 1960. Maser testified that Lind made the statement: "Well, those are good, sound buildings and they will make you a good investment." Maser said he believed and relied upon this representation of the condition of the buildings. Lind denied that he said anything about their condition. The parties orally agreed, plaintiffs to purchase and defendants to sell, for $16,250. Plaintiffs paid $250 earnest money. On June 3, 1960, they paid the remaining $16,000 and received a warranty deed.

The premises were never advertised for sale. No real estate broker participated in the transaction. No attorney examined the title or advised plaintiffs. No termite inspection was required. There was no mention of termites.

Maser discovered termites in July when he cut a hole in the bathroom floor of a downstairs apartment to enable a plumber to repair a leak under the bathtub.

Douglas P. Hayes testified that he was branch manager of an exterminating company, and had 10½ years of training and experience. He said that at the request of Maser he inspected both houses on July 11, 1960, and that both were seriously damaged as a result of general termite infestation. This was 38 days after plaintiffs took title, 47 days after they orally agreed to purchase. Maser did not discover termites for more than a month after plaintiffs took possession.

In the opinion of Hayes, there had been termites in both houses for several years. He described in detail the places and degree of damage from the infestation. His findings are corroborated by photographs and are undisputed.

The defendants testified that they did not know there were termites in the houses.

Donald Beaman testified that he lived in a house he built on a lot he purchased from the mother of the defendants, that it was across the street from the large house, that some years ago he had experience with ter-

mites in another part of Lincoln, and that there had been termites in the new garage at the house where he lives.

Beaman testified that on a Sunday afternoon after the death of the mother of defendants, which was on March 12, 1960, Ralph Lind and the tenant in the small house were cleaning out the basement of the large house, that he was called over and asked whether the city dump was open on Sunday afternoon, that he observed termites in wooden boards and paper boxes they were carrying out, and that they were all eaten up by termites. This was denied by defendants.

The defendants urge that because the subject of termites was not discussed or considered by the parties, fraud may not be predicated thereon. We decided this question in Russo v. Williams, 160 Neb. 564, 71 N. W. 2d 131. It was an action in equity to rescind a contract for the purchase of a Kearney motel where the vendors represented that it was in good or excellent condition when, in fact, it was infested by termites. The trial court denied plaintiffs relief, and granted specific performance of the contract on the cross-petition. We reversed the judgment and remanded the cause, holding that plaintiffs, although not entitled to rescission by reason of laches, were entitled to amend their petition and claim damages.

The vendors in the Russo case were executors of the estate of the deceased owner, and exercised testamentary power to sell. One executor, a brother, was a North Dakota rancher. The other, a sister, was a 75-year-old widow living in Fairbury, Nebraska. Neither was familiar with the premises sold. We quote from the opinion: "Termites seem to work in places where they are not easily observed and apparently it takes somewhat of an expert to discover their presence unless they are discovered by chance or have advanced to the stage of destruction where the damage itself makes their presence known. We do not think such was the situation

here at or before the time of the sale. It would appear that neither the appellants nor the executors had any knowledge of or ever had any experience with termites. They would apparently not have recognized them even if they had seen them. During the course of their negotiations, which led to the agreement, we find none of the parties thereto became aware of the presence of termites in the motel property. * * *

"On the four trips appellants made to the motel immediately preceding the 20th of March, when the contract was entered into, we find they had the opportunity to and did fully examine and inspect the motel property. However, nothing was ever said about termites on these occasions. Does this fact prevent them from now saying they relied on the representation made as to its condition? * * *

"The executors represented the motel property to be in good condition when, in fact, it was in a damaged condition because it contained termites. Under these circumstances specific performance of the contract would be unjust and the trial court was in error in granting it.

"Appellants are entitled to some form of relief in this proceeding because of the damaged condition of the motel * * *."

The subject of termites was not discussed or considered by the parties, and we held that plaintiffs were entitled to predicate fraud upon the representation that the buildings were in good condition.

Where ordinary prudence would prevent deception, an action for fraud perpetrated by deception will not lie, but this rule has no application where the defects are latent. Falkner v. Sacks Bros., 149 Neb. 121, 30 N. W. 2d 572. Termite infestation is a latent condition not easily discoverable by persons unfamiliar with termites.

It is the undisputed evidence that Maser was unfamiliar with termites. He made an ordinary examination of most parts of both houses, including the basement and the first and second floor of each house. No condition

of which he now complains was discernible by him. Without any fault on his part, he was unable to discover the latent damaged condition resulting from termite infestation. Under these circumstances he was entitled to purchase in reliance upon the representation of the good, sound condition of the buildings.

Russo v. Williams, *supra,* states: "Also, as stated in Pasko v. Trela, 153 Neb. 759, 46 N. W. 2d 139, by quoting from 23 Am. Jur., Fraud and Deceit, § 144, p. 945: 'The mere fact that one makes an independent investigation or examination, or consults with others, does not necessarily show that he relies on his own judgment or on the information so gained, rather than on the presumption of law to that effect. If under the circumstances, he is unable to learn the truth from such examination or investigation or, without fault on his part, does not learn it and in fact relies on the representations, he is entitled to relief, all other ingredients being present.'

"If the defects are concealed, such as here, we have said: 'These defects were latent. * * *'

"We do not think, because of the nature of termites, that the inspection and examination made by appellants before entering into the contract now prevents or estops them from saying they relied on the representation that the property was in good condition. It is apparent none of the parties observed anything that in any way made them suspicious."

A misrepresentation of the condition of buildings is not always remedial, and may constitute a mere expression of opinion upon which a purchaser may not rely, depending upon the circumstances of the particular case. Such a misrepresentation may be actionable if made and relied upon as a positive statement of an existing fact where the purchaser by the exercise of ordinary prudence is unable to discover the true damaged condition.

The defendants urge that they are not liable for a misrepresentation relating to a latent condition when

they were reasonably familiar with the premises and were not shown to have made a misrepresentation with knowledge of its falsity. Impliedly, they would excuse any misrepresentation if made innocently with honest belief of its truth.

Defendants claim that Lind was reasonably familiar with the premises sold and "had a right to make such a statement" of their condition. They argue that if "latent defects can be the subject of fraud when a person is in a position to know or be reasonably familiar with the premises, then no seller could be safe in giving any sales talk whatsoever about the condition of the premises."

We have consistently held that proof of scienter is unnecessary, a misrepresentation being actionable even though made innocently and with honest belief of its truth.

We again quote from Russo v. Williams, *supra:* "As early as Phillips v. Jones, 12 Neb. 213, 10 N. W. 708, this court held: 'And if a party, without knowing whether his statements are true or not, makes an assertion as to any particular matter upon which the other party has relied, the party defrauded in a proper case will be entitled to relief.'

"And in Newberg v. Chicago, B. & Q. R.R. Co., 120 Neb. 171, 231 N. W. 766, we said: 'This court was early committed to the doctrine: "Whether in an action for damages for false representations it is necessary either to aver or prove the scienter, the authorities do not agree. The better rule, and the one adopted by this court, is that the intent or good faith of the person making false statements is not in issue in such a case." '
* * *

"As stated in Peterson v. Schaberg, 116 Neb. 346, 217 N. W. 586: 'An instruction to a jury in an action for damages for false representation, which states in substance or in language naturally understood by a jury to mean that the defendant is not responsible for a mis-

statement of fact if made in good faith, is erroneous.' "

We have examined the record and conclude that the case was fairly tried and submitted. The judgment is affirmed.

AFFIRMED.