ROGER ERFTMIER, APPELLANT AND CROSS-APPELLEE, V. FRED EICKHOFF, APPELLEE AND CROSS-APPELLANT.

316 N.W.2d 754

Filed March 5, 1982. No. 43730.

Gaines, Otis, Mullen & Carta for appellant.

Luebs, Dowding, Beltzer, Leininger & Smith for appellee.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.

McCOWN, J.

This is an action on a guaranty and indemnity agreement. The jury returned a verdict for the plaintiff on the first cause of action for "50%" of the interest and principal due on a promissory note, and on the second cause of action, involving a farm agreement, found for the plaintiff and assessed the damages at zero dollars. The District Court granted defendant's motion for a new trial as to the first cause of action, and granted plaintiff's motion for new trial as to the second cause of action. The plaintiff has appealed and the defendant has cross-appealed.

The plaintiff, Roger Erftmier, was the owner of 1,280 acres of farmland in Keya Paha County, Nebraska, which he managed as a partnership with his daughters under the title of Seven Circle Farms. The farm is irrigated land with seven center pivot systems and its own wells and related equipment. In late summer and early winter 1976 the plaintiff Erftmier and James Boroff discussed a farm operation agreement, and on March 10, 1977, the plaintiff, as owner,

and James Boroff, as farmer, entered into a written agreement for the operation of the 1,280-acre farm. The term of the agreement was from March 1, 1977, until February 29, 1980, unless earlier terminated as provided in the agreement.

Under the agreement, on or before December 1 of each calendar year during the term of the agreement, the farmer was to deliver 42,000 bushels of No. 2 yellow corn to the elevator, which corn was the owner's share of the anticipated crop revenue. All corn or other crops in excess of the 42,000 bushels was the farmer's share. The owner paid taxes and insurance and the farmer was to pay all other expenses and costs. The agreement recognized that the farmer must arrange financing in order to perform his obligations under the agreement and required the farmer to grant the owner a security interest on the first 42,000 bushels of corn grown on the farm.

The agreement provided that if the farmer failed to observe or perform any of the conditions or covenants imposed upon him by the agreement, the owner had the right to declare the agreement terminated and had the right to reenter and repossess the farm and was entitled to any and all crops and improvements thereon "as liquidated damages for the Farmer's default hereunder." The agreement also provided: "Notwithstanding that the Owner may have terminated this Agreement pursuant to any of the terms hereof, such termination shall not prejudice the rights of Owner to recover from the Farmer any and all damages occasioned by his default hereunder."

Following the execution of the agreement, Boroff contacted several banks and financial institutions but was unable to arrange financing. After several meetings and discussions between plaintiff and Boroff, and Boroff's father-in-law, defendant Fred Eickhoff, financing the farm operation was discussed but the testimony as to the specific discussion is in conflict.

According to plaintiff's evidence, the defendant Eickhoff was willing to cosign Boroff's note and plaintiff had agreed to cosign Boroff's note along with Eickhoff as long as he had Eickhoff's personal guaranty. Eickhoff and Boroff testified that Eickhoff had refused to cosign any note and that a guaranty had never been discussed.

After discussions with the Omaha National Bank by plaintiff and Boroff, there is again a dispute in the evidence as to what occurred. The plaintiff testified that on the evening before May 5, 1977, he arranged by telephone for both Boroff and Eickhoff to come to the Omaha National Bank the next day where Boroff and plaintiff would sign the note and Eickhoff would sign the guaranty to the plaintiff. Only plaintiff and Boroff appeared at the bank. The plaintiff finally agreed to sign the note to the Omaha National Bank for $200,000, but directed that no funds be released by the bank to Boroff until he obtained the defendant's signature on the guaranty agreement.

On May 6, 1977, the plaintiff and Boroff went to Eickhoff's residence in Wood River, Nebraska. There is some conflict in the evidence as to what was said. Plaintiff testified that he told the defendant what the document was and told him to read it before signing it. The defendant testified that the plaintiff told him the document provided that if Boroff got hurt or could not perform his duties under the farm agreement the defendant would take care of the crops for Boroff. The parties agreed that the plaintiff told the defendant to read the document before signing it and that the defendant later signed the document.

The agreement provided: "To induce you to execute a note as co-maker to the Omaha National Bank for a farm loan in the amount of 200,000.00, to enable my son-in-law, James Borroff [sic], to perform his part of an agreement entered into March 10, 1977, as amended, between Seven Circle Farms as Owner and himself as the Farmer, and in consideration thereof, the

undersigned hereby guarantees the performance by the said James Borroff [sic] of all of the terms and conditions of the said Farm Agreement to be performed by James Borroff [sic] thereunder; and the undersigned undertakes to agree and indemnify and hold you and your successors and assigns harmless from and against any and all liability, loss, damage or expense, including attorneys' fees, which you may incur or sustain by reason of the failure of James Borroff [sic] to (1) fully perform and comply with the terms and the obligations of the said Farm Agreement or (2) to fully pay back the sums due under the note executed by James Borroff [sic] and Roger Erftmier with the Omaha National Bank to enable James Borroff [sic] to perform the terms and conditions of the aforesaid agreement." The plaintiff arranged for the release of the funds to Boroff on May 9, 1977.

The plaintiff became aware of financing problems in the farm operation in January or February 1978, and on April 10, 1978, plaintiff notified Boroff and Eickhoff that because of their inability to farm the land in accordance with the agreement he had been forced to seek another farmer for the property for 1978 and 1979. Meanwhile, some corn from the 1977 crop was sold and approximately $60,000 was credited to the $200,000 note on June 23, 1978. Apparently the owner's 42,000 bushels of the 1977 crop was delivered to plaintiff sometime in 1978. As of August 8, 1978, the amount due the Omaha National Bank on the note was $139,906.52. The plaintiff has subsequently executed renewal notes for that indebtedness.

On April 10, 1978, plaintiff leased the farm to John Von Heeder for the 1978-79 crop year. The rental was a 25 percent share of the corn crop with a guarantee of 21,000 bushels. The lease was renewed for the crop year 1979-80. In each year plaintiff received the guaranteed 21,000 bushels of corn which were sold for $2.05 per bushel for the 1979 year and $2.03 per bushel for the 1980 year.

The plaintiff filed this action seeking to recover on count 1 the principal balance of $139,906.52, plus interest, and on count 2 the sum of $74,818.87. The defendant alleged fraud and lack of consideration as defenses to the guaranty on both causes of action, and alleged a failure to mitigate damages as to the second cause of action.

After trial the jury returned a verdict for the plaintiff on the first cause of action for "50% note ballance [sic] and 50% interest," and on the second cause of action found in favor of the plaintiff but assessed the damages at zero dollars. As to the first cause of action the District Court overruled plaintiff's motion for judgment notwithstanding the verdict, and granted defendant's motion for a new trial. As to the second cause of action the District Court overruled plaintiff's motion for judgment notwithstanding the verdict and granted plaintiff's alternative motion for a new trial. The plaintiff has appealed and the defendant has cross-appealed.

The plaintiff contends that the trial court erred in overruling the motion for directed verdict and motion for judgment notwithstanding the verdict on each of the two causes of action. Plaintiff also contends that the District Court erred in submitting the issue of damages to the jury on each cause of action, and erred in granting a new trial on the issue of liability.

The terms of the guaranty and indemnity agreement are clear. The evidence is undisputed that the defendant was told to read the agreement and that he then signed it. This court has held many times that in the absence of fraud one who signs an instrument without reading it, when he can read and has the opportunity, cannot avoid the effect of his signature merely because he was not informed of the contents of the instrument. *Todd Brothers v. Federal Crop Ins. Corp.*, 178 Neb. 211, 132 N.W.2d 778 (1965); *Commodity Traders, Inc. v. Palmer*, 203 Neb. 667, 280 N.W.2d 49 (1979).

The defendant admits the execution and delivery of

the guaranty here, but alleges fraud and the absence of consideration as affirmative defenses. The burden of proving those affirmative defenses rested on the defendant.

The essential elements required to sustain an action for fraudulent misrepresentation are, generally speaking, that a representation was made as a statement of fact, which was untrue and known to be untrue by the party making it, or else recklessly made; that it was made with intent to deceive and for the purpose of inducing the other party to act upon it; and that he did in fact rely on it and was induced thereby to act to his injury or damage. See *Page v. Andreasen*, 200 Neb. 641, 264 N.W.2d 682 (1978).

Fraud is never presumed but must be established by the party alleging it by clear and satisfactory evidence. The general rule is that where ordinary prudence would have prevented the deception, an action for the fraud perpetrated by such deception will not lie. See *Growney v. C M H Real Estate Co.*, 195 Neb. 398, 238 N.W.2d 240 (1976). In the case at bar the evidence of the parties was that the plaintiff specifically told the defendant to read the one-page document, and that the defendant had the opportunity to do so before signing it. Under the record here the evidence was insufficient to establish an intent to deceive or justifiable reliance.

The defendant also contends that there was no consideration for the guaranty and indemnity agreement because the promissory note to the Omaha National Bank had already been signed by the plaintiff and Boroff 1 day before the guaranty was signed, and that the defendant, therefore, received no consideration for signing the guaranty. Defendant ignores the fact that plaintiff testified that he ordered the bank not to release the funds until he notified them to do so, and that he would not order them released until the defendant had signed the guaranty agreement. Plaintiff ordered the funds released after the guaranty was signed. This evidence stands

uncontradicted. A "consideration" for an agreement requires that there be a benefit on one side, or a detriment suffered or a service done on the other. The benefit rendered need not be to the party contracting but may be to anyone else at his procurement or request. *Grady v. Denbeck*, 197 Neb. 795, 251 N.W.2d 164 (1977).

The consideration of a contract need not move to the promisor. A disadvantage to the promisee is sufficient, although the promisor derives no benefit therefrom. *Musser v. Zurcher*, 180 Neb. 882, 146 N.W.2d 559 (1966).

The rule governing the granting of a directed verdict has been stated many times. In every case before the evidence is submitted to the jury, there is a preliminary question for the court to decide, when properly raised, not whether there is literally no evidence, but whether there is any evidence upon which a jury can properly proceed to find a verdict for the party producing it upon whom the burden of proof is imposed. *Edquist v. Commercial Sav. & Loan Assn.*, 191 Neb. 618, 217 N.W.2d 82 (1974). In the case at bar there was not sufficient evidence upon which a jury could properly proceed to find a verdict for the defendant, upon whom the burden of proving fraud and lack of consideration was imposed.

There was no dispute or conflict in the evidence as to the amount due on the promissory note involved in the first cause of action. Where the plaintiff is entitled to a verdict on the issue of liability and the amount of loss is undisputed, he is entitled to a directed verdict for the amount established by the evidence.

With respect to the second cause of action, although the plaintiff was entitled to a directed verdict on the issue of liability, there was a direct conflict in the evidence as to the amount of damages. The defendant specifically pleaded a failure to reasonably mitigate damages and the verdict for the plaintiff is apparently inconsistent with a zero dollar award of damages.

734

Under such circumstances the trial court properly granted plaintiff's alternative motion for new trial on the second cause of action, although the new trial should be only as to the issue of damages.

The judgment of the District Court granting defendant's motion for new trial as to the first cause of action is reversed and the cause is remanded to the District Court with instructions to enter judgment for the plaintiff for the full amount of principal and interest on the promissory note established by the evidence. The action of the District Court in granting motion for new trial as to the second cause of action is affirmed, but modified by limiting the new trial to the issue of damages.

AFFIRMED IN PART, AND IN PART REVERSED AND REMANDED FOR FURTHER PROCEEDINGS IN ACCORDANCE WITH THIS OPINION.