HAVELOCK BANK OF LINCOLN, A CORPORATION, APPELLANT, V. F. PACE WOODS II AND F. PACE WOODS II, DOING BUSINESS AS WOODS BROS. REALTY, APPELLEES.

361 N.W.2d 197

Filed January 11, 1985.   No. 83-693.

58

■■■■■■■

Edward F. Carter, Jr., and Dana Baker of Barney, Carter & Johnson, P.C., for appellant.

Terry R. Wittler of Cline, Williams, Wright, Johnson & Oldfather, for appellees.

BOSLAUGH, WHITE, and GRANT, JJ., and McCOWN, J., Retired, and COLWELL, D.J., Retired.

COLWELL, D.J., Retired.

This is a law action by Havelock Bank of Lincoln, plaintiff-appellant (hereafter Bank), against F. Pace Woods II and F. Pace Woods II, doing business as Woods Bros. Realty (hereafter Woods), for false representations concerning ownership of land inducing the Bank to loan $10,000 to Tartan Construction Company (hereafter Tartan) and its president, Duane R. Stewart (hereafter Stewart), secured by Tartan's assignment of proceeds from the sale of the real estate as thereafter received by Woods, the closing agent. Tartan is a bankrupt. Jury trial was waived. Judgment was entered for "defendant." The Bank appeals, assigning two errors that we consider together: (1) The trial court's failure to apply the correct measure of damages, and (2) The trial court's finding that the plaintiff failed to prove its damages with reasonable certainty.

The essential elements required to sustain an action for fraudulent misrepresentation are, generally speaking, that a representation was made as a statement of fact, which was untrue and known to be untrue by the party making it, or else recklessly made; that it was made with intent to deceive and for the purpose of inducing the other party to act upon it; and that he did in fact rely on it and was induced thereby to act to his injury or damage. Fraud is never presumed, but must be established by the party alleging it by clear and satisfactory

evidence. *Erftmier v. Eickhoff*, 210 Neb. 726, 316 N.W.2d 754 (1982).

Although not directly addressed by either party, we first examine the status and effect of the judgment entered, as taken from the judge's trial docket and later recorded in the court's journal as follows:

> The "assignment" in this case was of money consisting of the "proceeds" of the purchase price of this sale of certain property. The plaintiff having failed to prove what that amount was and therefore with research [sic] certainty its damages, judgment should be and hereby is entered in favor of the defendant and against the plaintiff. Costs taxed to plaintiff.

No formal journal entry or judgment was prepared and filed. Neither party requested the court to make specific findings of fact and conclusions of law as provided in Neb. Rev. Stat. § 25-1127 (Reissue 1979):

> Upon the trial of questions of fact by the court, it shall not be necessary for the court to state its finding, except, generally, for the plaintiff or defendant, unless one of the parties request it, with a view of excepting to the decision of the court upon the questions of law involved in the trial; in which case the court shall state in writing the conclusions of fact found separately from the conclusions of law.

From the assigned errors and supporting argument, it appears that appellant Bank assumes that the trial court made a finding for the Bank on all elements and issues of liability, overlooking the possibility that the judgment, as entered, was a general finding in favor of Woods on all issues, as is discussed in *Burgess v. Curly Olney's, Inc.*, 198 Neb. 153, 156, 251 N.W.2d 888, 890 (1977):

> "It shall not be necessary for the court to state its finding, except, generally, for the plaintiff or defendant, unless one of the parties request it. § 25-1127, R.R.S. 1943.
>
> "Where no section 25-1127, R.R.S. 1943, request has been made, the correct rule is: If there is a conflict in the evidence, this court in reviewing the judgment rendered

will presume that controverted facts were decided by the trial court in favor of the successful party and the findings will not be disturbed unless clearly wrong.

"A general finding that the judgment should be for a certain party warrants the conclusion that the trial court found in his favor on all issuable facts.

"The rules stated in the three immediately preceding syllabi are not made inapplicable merely because in addition to the general finding the trial court also mentioned certain matters specifically."

"The sufficiency of a writing claimed to be a judgment is to be tested by its substance rather than its form." 46 Am. Jur. 2d *Judgments* § 64 at 359 (1969).

As a judicial practice, a specific finding for the prevailing party is desirable; however, such is not required and, in the absence of a request for such findings, we examine this judgment as recorded. We conclude that the recitation therein, "judgment should be and hereby is entered in favor of the defendant and against the plaintiff," was a final order and a general finding for judgment in favor of Woods on all issuable facts, and the other findings concerning damages do not affect or change that general finding for Woods.

The findings of the court in a law action in which a jury is waived have the effect of a verdict of a jury and will not be disturbed on appeal unless clearly wrong. *South Sioux City Star v. Edwards*, 218 Neb. 487, 357 N.W.2d 178 (1984). See, also, *Steinauer v. Sarpy County*, 217 Neb. 830, 353 N.W.2d 715 (1984).

In a law action tried without a jury, it is not within our province to resolve evidentiary conflicts or to weigh evidence; rather, it is our obligation to review the judgment entered in light of the evidence and to consider the evidence in that light most favorable to the successful party, resolving all conflicts in his favor and granting him the benefit of every inference which is reasonably deducible therefrom.

(Syllabus of the court.) *Grubbs v. Kula*, 212 Neb. 735, 325 N.W.2d 835 (1982).

The conflict in the evidence generally relates to the

conclusions and intent of the parties. The court could find these facts. During the period 1976-79, Tartan, acting through Stewart, built several homes in the Skyline Rolling Hills Second Addition (hereafter Skyline Addition) to Lincoln, Nebraska, owned and developed by Woods Investment Company (hereafter WIC), solely owned by F. Pace Woods II, who also did business as Woods Bros. Realty. Tartan often financed its building expenses through the commercial department of plaintiff Bank, generally in this manner: Stewart personally purchased building lots from WIC; Tartan obtained a construction loan from another lender, secured a buyer, and contracted for the sale of the lot and a home to be built. Tartan then arranged the building expense financing with the Bank and delivered a copy of the sales contract to the Bank along with Tartan's assignment of sales proceeds as security in an amount equal to the loan. The amount of the loan generally was about half of the difference between the contract sales price and the construction loan. Woods Bros. Realty was the exclusive listing agent for Tartan in the Skyline Addition; Woods would endorse his consent to the assignment as an accommodation to the borrower and as required by the Bank.

On June 12, 1979, Sharon Aden, an agent for Woods Bros. Realty, and her husband bought a lot in the Skyline Addition directly from WIC; they arranged for a loan covering the cost of the lot and the construction of a home to be built by Tartan. As a supporting loan document, they executed an offer to purchase the house and lot for $83,500. For reasons not clear in the evidence the offer to purchase shows Stewart as seller; Woods Bros. Realty is designated as the escrow holder to close the sale. On June 25, 1979, Tartan arranged a $10,000 building expense loan with the Bank and delivered a copy of the offer to purchase along with an assignment of proceeds bearing Woods' consent endorsement. The assignment with consent endorsement was on a form prepared by the Bank for its use and convenience; its relevant parts are as follows:

### ASSIGNMENT

WHEREAS, the undersigned TARTAN CON-STRUCTION COMPANY, hereinafter referred to as party of the first part, has applied for a certain loan from

HAVELOCK BANK, Lincoln, Nebraska, hereinafter referred to as second party; and

WHEREAS, said party of the first part is the owner of a certain real estate property known as 1509 Trelawney Drive, situated in Lincoln, Lancaster County, Nebraska, which said property first party has contracted to sell through its agent, Woods Bros. Realty.

NOW THEREFORE, in consideration for the granting of said loan by party of the second part to party of the first part, and as collaterial [sic] security for said loan, party of the first part desires to and does herewith assign, transfer and convey to the second party the sum of Ten Thousand and No/100ths----------------($10,000.00) DOLLARS of the proceeds of the purchase price of the sale of the above described real estate, and Woods Bros. Realty, agent for first party, does hereby consent and agree to said Assignment.

THIS ASSIGNMENT is executed by party of the first part this 25th day of June, 1979.

TARTAN CONSTRUCTION COMPANY

By: /s/ Duane R. Stewart
(Duane R. Stewart, President)

Woods Bros. Realty, agent for party of the first part, hereby consents to the above Assignment of the sum of Ten Thousand and No/100ths------------($10,000.00) DOLLARS, of the proceeds of the purchase price of the sale of the above described real estate to Havelock Bank, Lincoln, Nebraska, in accordance with the terms of the Assignment herein.

WOODS BROS REALTY

By: /s/ F Pace Woods II

Tartan did not complete the Adens' house; the Adens had paid Woods $500, part of which was returned to them. Woods received no other funds related to either the assignment or the Aden contract.

The Bank contends that the recitation in the assignment that Tartan was the owner of the property at 1509 Trelawney Drive

was a false representation of title, knowingly made by Woods with the intent to deceive the Bank, and that the Bank relied upon that false statement in making the loan to Tartan to its damage. Both parties agree that the assignment was a security assignment of the proceeds from the sale of the property; this is included as a finding in the court's judgment. Woods argues that his consent to the assignment was nothing more than that, that any representations or recitations in the assignment proper were not attributable to him, and that he made no representation of title to the Bank.

Concerning the element of a false statement, Woods testified that he had executed at least 12 other consents to assignment of proceeds forms for Tartan; that he understood his duty under the consent was to honor the assignment of proceeds in favor of the Bank upon closing the sale; that when Stewart presented the consent forms, Woods routinely executed them as an accommodation to Stewart for his bank loan application; and that he did not examine the contents of the assignments. Woods further testified this procedure was followed in this case. He stated that at that time he did not know who owned the property described in the form and that he did not intend to make any representation to the Bank as to the ownership of the described property. The president of the Bank testified that he had no reason to think that Woods intended to defraud the Bank. The Bank produced no evidence meeting the test of clear and convincing, other than the written instruments, that Woods represented to the Bank that Tartan was the owner of the property, that Woods knew that Tartan was not the owner, and that he intended to deceive the Bank. The evidence shows that any representation of title in the assignment was made by Tartan; that Woods' responsibility was fiduciary in nature, related to the future closing of the sale and distribution of sale proceeds, including the assigned interest in favor of the Bank; that all this was known by the Bank; and that it relied upon Woods' faithful performance of that trust.

> The fraud involved in the misrepresentation must relate to a present or preexisting fact, and generally may not be predicated on an inference concerning any event in the future or acts to be done in the future unless such

representations as to future acts are falsely and fraudulently made with an intent to deceive.

*Smith v. Wrehe*, 199 Neb. 753, 758, 261 N.W.2d 620, 624 (1978).

Plaintiff Bank failed to prove that Woods knowingly made any statement or representation of a present or preexisting fact that Tartan was the owner of the property at Trelawney Drive or that Woods' execution of the consent to assignment of proceeds was either untrue or made with the intent to deceive the Bank. It is not necessary to discuss the other elements of the Bank's cause of action.

The evidence supports the judgment.

AFFIRMED.