HAHN & HUPF CONSTRUCTION, INC., A NEBRASKA CORPORATION, ET AL., APPELLANTS, V. HIGHLAND HEIGHTS NURSING HOME, INC., A NEBRASKA CORPORATION, ET AL., APPELLEES.

382 N.W.2d 607

Filed March 7, 1986.   No. 84-624.

Whelan Foote & Scherr, P.C., for appellants.

Jerry C. Stirtz of Martin, Stirtz & Martin, for appellee Nolte.

Arthur R. Langvardt, for appellees Plum et al.

BOSLAUGH, HASTINGS, SHANAHAN, and GRANT, JJ., and BRODKEY, J., Retired.

HASTINGS, J.

The plaintiffs, all contractors, in a suit arising out of the breach of construction contracts by the owner, Highland Heights Nursing Home, Inc., a bankrupt corporation, sought recovery from the individual directors.

The theory of plaintiffs' recovery was (1) false and fraudulent representations made by the directors individually to the plaintiffs; (2) acts committed by the individual directors in permitting the plaintiffs to proceed with construction when the directors knew, or should have known, the corporation was

insolvent, amounting to misfeasance and malfeasance in the breach of a fiduciary duty, thus permitting a piercing of the corporate veil; and (3) conspiracy on the part of each director to defraud the plaintiffs.

Default judgments were entered against Highland Heights and director Mike McGrath without comment by the trial court. Motions of all other defendant directors for dismissal made at the close of plaintiffs' case were sustained. Plaintiffs have appealed, assigning as error generally the court's rejection of the three claims set out above.

For some time Vera Plum had been interested in building and operating a nursing home. She began talking with her banker, Ramon Nolte, in the late 1960s or early 1970s about the financial feasibility of such a project. She discovered that financing was not readily available, so she continued to make inquiries until the summer of 1973.

As a result of contacts made with administrators at a care facility convention, she met a person by the name of Mike McGrath, who told her that money would be available for her project. He informed Mrs. Plum that he represented an enterprise known as Community Development of Glenwood, Iowa (Com-Dev).

On September 11, 1973, Com-Dev entered into a written agreement with Mrs. Plum regarding the construction of a nursing home. By the terms of that agreement Mrs. Plum represented that she had an administrator's license to operate a home and would furnish 8 acres of land as a site for the proposed facility. Com-Dev represented that it had the financial strength to assist in the financing of the home and that a joint venture would be formed whereby Vera Plum and Com-Dev each would own 50 percent of the stock.

At an earlier date, May 4, 1973, the Nebraska Department of Health had issued a letter approving the application of Mrs. Plum to build the nursing facility. This is sometimes called a certificate of need. The application had been supported, in part at least, by a letter dated February 6, 1973, written by Ramon Nolte, president and cashier of the Adams County Bank. In that letter, among other things, Nolte represented that "[h]aving the platted area available for the erection and the

necessary resources, the funds should readily be available for the project."

Articles of incorporation were duly adopted and recorded on September 27, 1973. Twelve directors were elected, including Mike McGrath and Ramon Nolte. Vera Plum and her husband deeded the 8 acres of land to the corporation as agreed. Stock was issued in the amounts of 10,000 shares to Merle and Vera Plum and 10,000 shares to Com-Dev. Two deposits of $5,000, two of $2,500, and one of $150 were made in the corporate bank account.

At Vera Plum's request Harold Friborg drew up some preliminary designs for the nursing home in 1971. In 1973 the newly formed corporation hired Friborg's architectural firm to finalize the design drawings, prepare contracts, solicit and receive bids, and check the construction while the project was being built. Near the end of February 1974, Vera Plum signed contracts on behalf of Highland Heights Nursing Home engaging various plaintiffs as contractors and subcontractors.

Harold Hahn of Hahn & Hupf Construction, Inc., was originally in touch with Mrs. Plum in 1968 or 1969 when she approached him to make a preliminary estimate on some plans she had for a nursing home. In May of 1972, at her request, he updated his estimate. At that time Mrs. Plum informed him that she was trying to get financing for the project.

Finally, in September 1973 she asked Hahn for a "turn key" price on a nursing home and said that he could pick up the plans from Harold Friborg. However, it was not until after the first of the year, 1974, that detailed drawings were available, and Hahn submitted a written bid dated February 26, 1974.

In dealing with Harold Friborg, Hahn stated that he inquired about financing, whether "they had financing," and was told by Friborg that he was sure they did, that he (Friborg) had been paid. Friborg himself testified that when Hahn inquired about where the money was coming from, he, Friborg, relayed the information that he received from Mrs. Plum, that it was coming from a group of backers in Iowa. Hahn also claimed that Friborg told him, "What are you worrying about? There are two bankers on the board."

Hahn & Hupf Construction commenced working on the

project shortly after the middle of March. That firm received payment on its initial application about April 29. The second application for payment was dated April 30, 1974, and the third application May 30, 1974. Payment on neither of these applications was ever received. Hahn talked to Mrs. Plum on May 30, and she assured him that he would be paid. Within the next day or so Hahn received a letter from Vera Plum, as president of Highland Heights Nursing Home, dated May 31, advising that all work on the project should be stopped because funds still had not been obtained to complete the project.

Plaintiffs argue that the certificate of need issued by the health department to Mrs. Plum was based, in part at least, on the representations of Ramon Nolte as to Mrs. Plum's financial worth. Therefore, they insist, anyone dealing with that certificate would infer that proper financial resources were available. However, the testimony of Harold Hahn does not bear this out. He stated that at the time of his dealings with the Highland Heights project, he did not even know about the financial aspects of a certificate of need, nor did he know Ramon Nolte.

Vera Plum testified that she was aware of the fact that on March 19, 1974, Com-Dev surrendered its stock in Highland Heights. She also knew that the reason the stock was surrendered was because Com-Dev could not get financing, but she insisted that Mike McGrath was still calling her, telling her that financing would be available. There is no indication in the record that any of the other directors were aware of these developments.

The testimony of Vera Plum also indicates that at an April 24, 1974, board meeting at which only she, her husband, Marjorie Pfeil, Roger Stacy, Jerry Foy, and Lee Mingo were present, it was discussed "by Roger Stacy if the work could be stopped on Highland Heights. The answer was no." She said she was the one who gave the "no" answer, and it was because McGrath continued to insist that the money would be coming.

It was not until May 30, according to the testimony of Mrs. Plum, that she knew for certain there would be no money coming to finance her project. This was when two men from Iowa came over and conveyed this information. She

immediately went to Nolte's office, where the letter stopping work was drafted. Highland Heights Nursing Home, Inc., has since been discharged in bankruptcy.

The record does not disclose the trial court's reasoning in granting the various motions of the defendants to dismiss this action. However, on appeal from a decree dismissing an action at the close of plaintiff's evidence, this court must determine whether the cause of action was proved, and must accept as true plaintiff's evidence and any reasonable conclusions deducible therefrom. *Hrabik v. Gottsch*, 198 Neb. 86, 251 N.W.2d 672 (1977); *Armbruster v. Stanton-Pilger Drainage Dist.*, 165 Neb. 459, 86 N.W.2d 56 (1957).

We deal first with plaintiffs' claim that they should have been permitted to recover on the theory of a conspiracy. The principal element of a conspiracy is an agreement or understanding between two or more persons to inflict a wrong against or injury upon another. *Davidson v. Simmons*, 203 Neb. 804, 280 N.W.2d 645 (1979). The record in this case utterly fails to reveal one instance of an understanding arrived at to make false representations in order to cause harm or injury to any of the plaintiffs.

What remains is an action for fraud. Plaintiffs claim Vera Plum misrepresented the financial stability of the defendant corporation in order to induce the plaintiffs to undertake the building contracts. They further insist that the remaining directors are liable for failing to take steps to prevent these misrepresentations.

> An individual director cannot escape liability for fraudulent corporate action taken under authorization affirmatively approved by him merely by asserting his ignorance of facts he had a duty to know and should have known. Where the duty of knowing facts exists, ignorance due to neglect of duty on the part of a director creates the same liability as actual knowledge and a failure to act thereon.

> . . . [W]here fraud is committed by a corporation it is time to disregard the corporate fiction and hold the persons responsible therefor in their individual capacities.

*Fowler v. Elm Creek State Bank*, 198 Neb. 631, 638-39, 254

N.W.2d 415, 419 (1977).

There is no evidence of actual misrepresentations made by any director other than Vera Plum, and, of course, Mike McGrath. The most that can be said of the others is that, knowing of the precarious financial position of their corporation, they failed to speak out to prevent detrimental reliance on the part of the plaintiffs. This might amount to constructive fraud, but liability on that basis must involve a breach of a fiduciary relationship. *Vogt v. Town & Country Realty of Lincoln, Inc.*, 194 Neb. 308, 231 N.W.2d 496 (1975).

It is true that directors of a corporation occupy a fiduciary relation to the *corporation* and its *stockholders. Davis v. Walker*, 170 Neb. 891, 104 N.W.2d 479 (1960). Directors may be held liable to the *shareholders* even in those cases where, by their negligence, they fail to inform themselves in any appreciable degree on matters of utmost importance to the shareholders whereby the latter suffer damage. *Doyle v. Union Ins. Co.*, 202 Neb. 599, 277 N.W.2d 36 (1979).

Apropos of the situation involved here is the following quotation from 18B Am. Jur. 2d *Corporations* § 1830 at 682-83 (1985):

> There is much loose language describing directors or officers of corporations as trustees or fiduciaries for the benefit of creditors, but this is to be understood to be limited to cases wherein the assets of the corporation are involved [citing *Hill v. Lumber Company*, 113 N.C. 173, 18 S.E. 107 (1893)] or the corporation is being dissolved and its assets or capital stock are considered a trust fund for creditors, and is not to be taken to be true in a technical or general and unlimited sense.

*Hill*, incidentally, involved a preference made by the directors in favor of a director-creditor of the corporation to the prejudice of other general creditors.

We believe that the trial court was correct in directing a verdict as to all defendants other than Vera Plum.

It is quite apparent that Vera Plum was, in reality, the corporation. She made all of the decisions. She was the one who ordered plans from the architect. She was the one who dealt with the contractor Hahn & Hupf Construction. She was the

one who failed to order a construction stoppage when plans for financing had all but evaporated.

In order to sustain an action for fraud and false representation, the plaintiff must, in substance, prove (1) that a representation was made as a statement of fact; (2) that it was false; (3) that the party making the representation knew it was false, or else made it without knowledge as a positive statement of known fact, i.e., recklessly made; (4) that it was made with intent to deceive and for the purpose of inducing the other party to act upon it; (5) that the party hearing the false statement had a reasonable basis to rely on the statement and did in fact rely on it and was damaged thereby; and (6) the amount of the damage. *Bellairs v. Dudden*, 194 Neb. 5, 230 N.W.2d 92 (1975); *Allied Building Credits, Inc. v. Damicus*, 167 Neb. 390, 93 N.W.2d 210 (1958).

Vera Plum wanted to build and operate a nursing home. This had been a longtime dream of hers. She had tried without success to obtain conventional financing through her personal banker. Without reservation, she placed her financial trust in Mike McGrath, whom she had only recently met, and on the guarantee of a corporation, Com-Dev, about which she knew nothing. She had no reasonable assurance of financing. Yet she contracted on behalf of a newly formed, hopelessly undercapitalized corporation, with local contractors, to construct a half-million-dollar facility.

She knew as early as March 19, 1974, that her corporation backer had divested itself of stock in her company because it, Com-Dev, could not get financing. She continued to rely on vague and illusory promises of Mike McGrath. She knew on April 24 that the executive officer of Com-Dev, Highland Heights director Roger Stacy, and others, felt that construction should be stopped because of a lack of financing. Yet she continued to rely on the never-documented promises of Mike McGrath of a "pot of gold." Not once did it occur to her to notify the plaintiffs, who were daily expending time and money on her project, that there was no money to pay them.

A director who misrepresents a material fact to another to induce the latter to enter into a financial relation with a corporation, to that person's detriment, may be liable to such

other person for fraud and misrepresentation. Where that same director makes a representation which at the time is believed to be true, but later on he or she finds that it is false, and that other person continues to rely on the original representation to that person's detriment, that director may be personally liable, depending on the circumstances of the case. *English v. Bruin Engineering, Inc.*, 201 Neb. 791, 272 N.W.2d 753 (1978); *Ashby v. Peters*, 128 Neb. 338, 258 N.W. 639 (1935).

Accepting as true plaintiffs' evidence and any reasonable conclusions deducible therefrom, which we must do in this case in the posture in which we find it, we cannot say as a matter of law that defendant Vera Plum was entitled to have the action dismissed as to her. A question of fact was presented as to whether plaintiffs were entitled to recover in light of the rules of law set forth in this opinion. Accordingly, we reverse the judgment of the district court rendered in favor of Vera Plum and remand the cause for further proceedings consistent with this opinion. The balance of the judgment is affirmed.

AFFIRMED IN PART, AND IN PART REVERSED AND
REMANDED FOR FURTHER PROCEEDINGS.