DON E. NIELSEN, APPELLANT, V. ORLENE ADAMS, APPELLEE.

388 N.W.2d 840

Filed June 20, 1986.   No. 85-834.

Clarence E. Mock of Johnson and Mock, for appellant.

Thomas E. Brogan of Brogan & Stafford, P.C., for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

KRIVOSHA, C.J.

This appeal concerns the essential elements which must be established in order to sustain an action for fraudulent misrepresentation. A review of the cases previously decided by this court discloses that there appears to be a conflict as to what these essential elements are. This conflict, however, can be resolved. Nevertheless, for reasons more particularly set out hereinafter, we find that the district court judgment in the instant case must be set aside and the cause remanded for a new trial in accordance with this opinion.

The record discloses that early in January of 1984 the

appellant, Don E. Nielsen, desiring to purchase a home for his son in West Point, Nebraska, considered a house owned by the appellee, Orlene Adams. While touring the house, Nielsen observed a sump pump in the closet at the foot of the basement stairs. After inquiry by Nielsen, Ms. Adams advised Nielsen that the sump pump was installed to cure a small problem of moisture accumulating at the bottom of the stairway. When asked directly by Nielsen as to whether Ms. Adams had experienced previous water problems anywhere else in the basement, Ms. Adams replied, "Absolutely not." Nielsen continued an inspection of the basement and found no apparent evidence of any water. Satisfied, Nielsen purchased the house shortly thereafter and took possession in early March 1984. Approximately 1 month later, water entered into the basement during a series of spring rains, causing extensive damage. Nielsen filed suit against Ms. Adams, alleging fraudulent misrepresentations, and sought damages. During the course of the trial, Ms. Adams acknowledged that she had concealed information from Nielsen concerning previous water leakage in the basement, but claimed that the leakage disclosure would not have been "relevant" because, she said, she believed that problem had been corrected. Removal of the paneling by Nielsen, however, revealed an extensive water problem that had existed for years in the basement, sufficient to have rotted the wood studs on all walls of the basement containing paneling.

At the close of all the evidence, the case was submitted to the jury, and the jury returned a verdict in favor of Ms. Adams and against Nielsen. The sole assignment of error presented to us pertains to instruction No. 2, given by the court and which Nielsen maintains was in error. Instruction No. 2 was, in part, as follows:

Before the plaintiff can recover against the defendant the burden of proof is upon the plaintiff to prove by a preponderance of the evidence each and all of the following propositions:

1. That the defendant made false representations to the plaintiff regarding problems with water leaking into the basement of the house in question and that this constituted a false representation of a material fact;

2. That the defendant knew that the aforesaid representations were false when they were made, or in the alternative, the defendant made said representations with a reckless disregard as to truth or falsity;

3. *That the false representations were made by the defendant with the intent to decieve* [sic] *the plaintiff; or in the alternative, the defendant made false representations with a reckless disregard for truth or falsity*;

4. That the statements made by the defendant were made for the purpose of inducing the plaintiff to purchase the house;

5. That the plaintiff did in fact rely upon said representations and was induced thereby to purchase the real estate in question;

6. That the plaintiff was thereby damaged; and

7. The nature, extent and amount of the damages thus sustained by the plaintiff.

(Emphasis supplied.)

Nielsen specifically challenges item 3 of instruction No. 2. He maintains that imposing upon the plaintiff the burden to prove "[t]hat the false representations were made by the defendant with the *intent* to decieve [sic] the plaintiff" (emphasis supplied) was wrong under the law because it imposed upon Nielsen an improper and additional burden. In support of his position Nielsen argues that we have previously held that scienter is not an element of fraud and that even an innocent statement made without knowledge can be the basis for recovery. Nielsen is correct in that decisions of this court can be found which hold that scienter is not an element of fraud. In *Maser v. Lind*, 181 Neb. 365, 371, 148 N.W.2d 831, 834 (1967), we said: "We have consistently held that proof of scienter is unnecessary, a misrepresentation being actionable even though made innocently and with honest belief of its truth." A more careful examination of the cases, however, reveals that we may have been wrong about how we have stated the rule.

The problem is further confused by the fact that we have sometimes omitted any reference to "intent to deceive" in the instruction to the jury and at other times have included "intent to deceive." For example, in the early case of *Peterson v.*

*Schaberg*, 116 Neb. 346, 217 N.W. 586 (1928), we said:

> To maintain an action for damages for false representation, the plaintiff, in substance, must allege and must prove by a preponderance of the evidence the following elements: (1) What representation was made; (2) that it was false; (3) that the defendant knew it was false, or else made it without knowledge as a positive statement of known fact; (4) that the plaintiff believed the representation to be true; (5) that the plaintiff relied on and acted upon the representation; (6) that the plaintiff was thereby injured; and (7) the amount of the damages.

(Syllabus of the court.)

And recently, in the case of *ServiceMaster Indus. v. J.R.L. Enterprises, ante* p. 39, 43, 388 N.W.2d 83, 86 (1986), we said:

> To sustain a cause of action for fraudulent representation, a plaintiff must show (1) that a representation was made, (2) that the representation was false, (3) that when made the representation was known to be false or made recklessly without knowledge of its truth and as a positive assertion, (4) that it was made with the intention that the plaintiff should rely upon it, (5) that the plaintiff reasonably did so rely, and (6) that he or she suffered damage as a result.

Of significance is the fact that, throughout all of this time, and through the various cases from *Peterson v. Schaberg, supra,* to *ServiceMaster Indus. v. J.R.L. Enterprises, supra,* no reference is made to "intent to deceive."

However, there appears to be a second line of cases decided by this court which have included "intent to deceive" as a necessary element. As an example, in *Page v. Andreasen,* 200 Neb. 641, 644, 264 N.W.2d 682, 685 (1978), we said:

> The essential elements required to sustain an action for fraudulent misrepresentation are, generally speaking, that a representation was made as a statement of fact, which was untrue and known to be untrue by the party making it, or else recklessly made; *that it was made with intent to deceive* and for the purpose of inducing the other party to act upon it; and that he did in fact rely on it and was

induced thereby to act to his injury or damage.
(Emphasis supplied.)

The same rule appears in a number of other cases decided by this court, including *Hahn & Hupf Constr. v. Highland Heights Nsg. Home*, 222 Neb. 189, 382 N.W.2d 607 (1986); *Havelock Bank v. Woods*, 219 Neb. 57, 361 N.W.2d 197 (1985); *Flakus v. Schug*, 213 Neb. 491, 329 N.W.2d 859 (1983); and *Erftmier v. Eickhoff*, 210 Neb. 726, 316 N.W.2d 754 (1982).

An examination of our cases discloses that this element of "intent to deceive" first found its way into our law in 1969 in the case of *Transportation Equipment Rentals, Inc. v. Mauk*, 184 Neb. 309, 312, 167 N.W.2d 183, 186 (1969), wherein we said:

> The essential elements required to sustain an action for fraud are, generally speaking, that a representation was made as a statement of fact, which was untrue and known to be untrue by the party making it, or else recklessly made; *that it was made with intent to deceive* and for the purpose of inducing the other party to act upon it; and that he did in fact rely on it and was induced thereby to act to his injury or damage.

(Emphasis supplied.)

As already noted, while we have, on occasion, continued to use "intent to deceive" as an element of fraud, we have not consistently done so, nor have we always agreed that using "intent to deceive" was proper. In *Mid-States Equipment Co. v. Evans*, 191 Neb. 230, 232-33, 214 N.W.2d 496, 498 (1974), Judge Spencer, in a concurring opinion, noted:

> Appellant in this action contends that intent is an element of fraud in Nebraska. He relies upon Transportation Equipment Rentals, Inc. v. Mauk (1969), 184 Neb. 309, 167 N.W.2d 183 . . . .
>
> The statement "that it was made with intent to deceive and for the purpose of inducing the other party to act upon it" crept into that case by inadvertence and had no bearing on the result reached. Our law is otherwise. See, Swanson Petroleum Corp. v. Cumberland (1969), 184 Neb. 323, 167 N.W.2d 391; Allied Building Credits, Inc. v. Damicus (1958), 167 Neb. 390, 93 N.W.2d 210; Campbell v. C & C Motor Co. (1946), 146 Neb. 721, 21 N.W.2d 427.

The truth is that this is one of those times when it appears that everyone may, in part, be correct, though no one in toto is right. Professor Keeton, carrying the banner for Professor Prosser in Prosser and Keeton on the Law of Torts, *Misrepresentation and Nondisclosure* ch. 18 (5th ed. 1984), appears to have explained the reason for this confusion in the law of fraudulent misrepresentation. While it is generally suggested that it is poor writing style to quote at length from another, where, as here, the "other" has fully and eloquently described the problem and little can be served by attempting to rephrase it simply to take original credit, we quote at length from Prosser and Keeton:

> Misrepresentation and nondisclosure runs all through the law of torts, as a method of accomplishing various types of tortious conduct which, for reasons of historical development or as a matter of convenience, usually are grouped under categories of their own. . . .
>
> . . . .
>
> The elements of the tort cause of action in deceit . . . have been stated as follows:
>
> 1. A false representation made by the defendant. In the ordinary case, this representation must be one of fact.
>
> 2. Knowledge or belief on the part of the defendant that the representation is false—or, what is regarded as equivalent, that he has not a sufficient basis of information to make it. This element often is given the technical name of "scienter."
>
> 3. An intention to induce the plaintiff to act or to refrain from action in reliance upon the misrepresentation.
>
> 4. Justifiable reliance upon the representation on the part of the plaintiff, in taking action or refraining from it.
>
> 5. Damage to the plaintiff, resulting from such reliance.

Prosser and Keeton, *supra* § 105 at 725, 728.

It therefore appears that one of the recognized elements of an action in fraud is indeed scienter. However, a more careful reading of the cases, as explained by Professor Keeton, discloses that the reference to scienter is extremely technical.

Professor Keeton goes on in his treatise on torts to say:

It was not until as late as 1889 that the House of Lords, in the leading case of Derry v. Peek, clearly identified the deceit action with intentional misrepresentation, and left negligence and strict responsibility to be dealt with by other remedies.

In that case the defendants, who were directors of a tramway corporation, issued a prospectus to induce the public to subscribe for stock, which contained the unqualified statement that "* * * the company has the right to use steam, or mechanical motive power, instead of horses. * * *" In fact, the company had no such right. The plaintiff, who had purchased stock on the faith of the statement, brought an action of deceit. The court took an extremely charitable view of the evidence, and concluded that the defendants had honestly believed the statement to be true, although they had no reasonable ground for any such belief. It was held that the action could not be maintained, since nothing more than negligence was shown. For deceit there must be proof "that a false representation has been made (1) knowingly, or (2) without belief in its truth, or (3) recklessly, careless whether it be true or false."

Prosser and Keeton, *supra* § 107 at 740.

The author then turns to the question of scienter, saying:

The intent which underlies an intentional misrepresentation is a more complex matter than the relatively simple intention in the case of assault and battery. It involves the intent that a representation shall be made, that it shall be directed to a particular person or class of persons, that it shall convey a certain meaning, that it shall be believed, and that it shall be acted upon in a certain way. In the usual case, all of this is present beyond dispute. In addition, there is the intent to accomplish an ultimate purpose, as to benefit the speaker, or to cause harm to the one addressed. It is well settled that, except as to the issue of punitive damages, this last is of no importance. The fact that the defendant was disinterested, that he had the best of motives, and that he thought he was doing the plaintiff a kindness, will not absolve him from

liability, so long as he did in fact intend to mislead.

So far as culpability is concerned, none of these intentions is controlling. The intent which becomes important is the intent to deceive, to mislead, to convey a false impression. Obviously this intent, which has been given the name of "scienter" by the courts, must be a matter of belief, or of absence of belief, that the representation is true; and it was this element which was so strongly emphasized in Derry v. Peek. The state of the speaker's mind, notwithstanding its elusiveness as a matter of psychology and its difficulty of proof, must be looked to in determining whether the action of deceit can be maintained.

There is of course no difficulty in finding the required intent to mislead where it appears that the speaker believes his statement to be false. Likewise there is general agreement that it is present when the representation is made without any belief as to its truth, or with reckless disregard whether it be true or false. Further than this, it appears that all courts have extended it to include representations made by one who is conscious that he has no sufficient basis of information to justify them. A defendant who asserts a fact as of his own knowledge, or so positively as to imply that he has knowledge, under circumstances where he is aware that he will be so understood when he knows that he does not in fact know whether what he says is true, is found to have the intent to deceive, not so much as to the fact itself, but rather as to the extent of his information. Since the state of his mind may be inferred from the circumstances, and in the absence of satisfactory evidence to the contrary it may sometimes be quite reasonable to infer that he must have known that he did not know, there is a certain amount of leeway in the direction of holding the defendant to something like a reasonable standard of judgment.

Apparently it is at this point that the line is to be drawn between an intent to mislead and mere negligence. An honest belief, however unreasonable, that the representation is true and the speaker has information to

justify it, was held in Derry v. Peek to be no sufficient basis for deceit. It is of course clear that the very unreasonableness of such a belief may be strong evidence that it does not in fact exist; and where this conclusion is reached as an inference of fact, or even through a presumption capable of being rebutted, there is nothing inconsistent with a basis of intent.

Prosser and Keeton, *supra* § 107 at 741-42.

It seems clear that if one were to quickly read Prosser and Keeton on the Law of Torts, one could conclude that scienter or the intent to deceive is a necessary element of the tort cause of action in deceit. A closer reading, however, makes it clear that including "intent to deceive" as a separate element of a cause of action for fraudulent misrepresentation is unnecessary and improper. As pointed out in *Calvert Fire Ins. Co. v. Unigard Mut. Ins. Co.*, 526 F. Supp. 623, 637 (D. Neb. 1980):

In sum, proof of scienter is necessary. However, as the case law demonstrates, this is scienter in terms of a knowledge requirement, not in terms of an "intent to deceive," as Unigard contends. Accordingly, it is clear, in light of the foregoing discussion, that the essential elements necessary to prove a cause of action for misrepresentation have, in essence, remained the same. There are no actual differences, as the parties in this case contend.

Cf. *Christopher v. Evans*, 219 Neb. 51, 361 N.W.2d 193 (1985) (an equitable action seeking to rescind a contract based upon fraudulent concealment where intent is specifically alleged).

It would appear that in the instant case instruction No. 2(2), which required the jury to find that the defendant knew that the representations were false or made with reckless disregard, and instruction No. 2(3), which required the jury to find that the statements were made with the intent to deceive or with reckless disregard for the truth, are really one and the same. Yet, by making them two separate items, the jury could mistakenly conclude that, before the plaintiff can recover, the plaintiff must prove both elements and that if the evidence establishes item 2, something more and different is required to prove item 3. In a very technical sense, scienter is required. However, it is

expressed in terms of false or reckless statements, as set out in instruction No. 2(2). Instruction No. 2(3) is not necessary and is confusing.

Having considered the history of the matter and the various cases within this jurisdiction, we conclude that adding "intent to deceive" as a separate element rather than its being included in the element of knowledge or belief is error. Our earlier holding in *Peterson v. Schaberg*, 116 Neb. 346, 217 N.W. 586 (1928), and our recent holding in *ServiceMaster Indus. v. J.R.L. Enterprises, ante* p. 39, 388 N.W.2d 83 (1986), therefore, are correct statements of the law and ones which we should continuously, consistently, and uniformly follow. In doing so we believe we will nevertheless be true to the rules of law regarding the necessary elements of the offense of a tort action for false representation or deceit. We therefore hold that in order to maintain an action for damages for false representation, the plaintiff must allege and prove by a preponderance of the evidence the following elements: (1) that a representation was made; (2) that the representation was false; (3) that, when made, the representation was known to be false, or made recklessly without knowledge of its truth and as a positive assertion; (4) that it was made with the intention that the plaintiff should rely upon it; (5) that the plaintiff reasonably did so rely; and (6) that he or she suffered damage as a result.

If the defendant can establish by a preponderance of the evidence that the defendant had a reasonable basis to believe that the statement of fact was true, then recovery will be denied. If, on the other hand, the evidence is such that a reasonable person in the position of the defendant could not have honestly believed the statement to be true, recovery may be had. In any event, it need not be shown that the defendant also had a "bad" motive in doing what he or she did. The fact that the defendant deceives, itself, establishes scienter even though the defendant may have been unaware of the deception.

Therefore, to the extent that we have, in previous cases, included "intent to deceive" as a necessary element of a cause of action for fraudulent misrepresentation or deceit, we specifically now reject that view, and to the extent that *Transportation Equipment Rentals, Inc. v. Mauk*, 184 Neb.

309, 167 N.W.2d 183 (1969); *Hahn & Hupf Constr. v. Highland Heights Nsg. Home*, 222 Neb. 189, 382 N.W.2d 607 (1986); *Havelock Bank v. Woods*, 219 Neb. 57, 361 N.W.2d 197 (1985); *Flakus v. Schug*, 213 Neb. 491, 329 N.W.2d 859 (1983); and *Erftmier v. Eickhoff*, 210 Neb. 726, 316 N.W.2d 754 (1982), include as a necessary element "intent to deceive," they are specifically overruled.

As we have already indicated, our decision herein may, at first blush, seem to be in conflict with our decision in *Maser v. Lind*, 181 Neb. 365, 148 N.W.2d 831 (1967). We believe, however, that a more careful reading of the opinion discloses such not to be the case. While, perhaps, the language in *Maser v. Lind* was broader than it need be, the general statement to the effect that " ' "if a party, without knowing whether his statements are true or not, makes an assertion as to any particular matter upon which the other party has relied, the party defrauded in a proper case will be entitled to relief" . . .' " is, indeed, a correct statement of the law. *Id.* at 371, 148 N.W.2d at 834-35. Likewise, we believe that *Maser v. Lind* is correct in suggesting that it is not necessary to either plead or prove the element of scienter. But, rather, as we have already indicated, scienter is established when the evidence discloses that the defendant made a false statement with the intention that the plaintiff rely upon the statement. We do not, therefore, believe that *Maser v. Lind, supra*, is inconsistent with our position herein.

It is regrettable that the trial court, relying upon cases decided by this court which used "intent to deceive" as a necessary element, instructed the jury as it did. Nevertheless, we believe that justice requires that the plaintiff's case be submitted to the jury upon a correct statement of the law, and for that reason we are left with no other alternative but to reverse the judgment and remand the cause with directions to grant the plaintiff a new trial.

REVERSED AND REMANDED FOR A NEW TRIAL.